**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: idiaz@bursor.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIANCA SLAVIERO and AISLEY DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BABY LIST, INC.,<br><br>Defendant. | Case No. 3:25-cv-09496-RS<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION**<br><br>Date: April 16, 2026<br>Time: 1:30 p.m.<br>Dept.: Courtroom 3<br>Judge: Hon. Richard Seeborg |

## TABLE OF CONTENTS

PAGE(S)

I.     INTRODUCTION .............................................................................................................. 1

II.    ARGUMENT .................................................................................................................... 1

    A.     Whether Plaintiffs Agreed To Arbitrate Is The Threshold Issue ............................... 1

    B.     No Agreement To Arbitrate Was Formed .................................................................... 2

        1.     Plaintiffs were not given notice of the terms .................................................. 2

    C.     There Is No "Clear and Unmistakable" Evidence That The Parties Agreed To Arbitrate Issues of Arbitrability ................................................................................. 12

        1.     The incorporation of JAMS Rules does not amount to "clear and unmistakable" evidence because Plaintiffs are unsophisticated parties ....... 13

    D.     The Delegation Clause Is Unconscionable ................................................................ 15

        1.     The delegation clause is procedurally unconscionable ................................. 15

        2.     The delegation clause is substantively unconscionable ................................ 17

    E.     The Agreements Are Unconscionable ....................................................................... 19

        1.     Defendant's arguments to the contrary fail ................................................... 20

    F.     The Court Must Invalidate The Entire Agreements Due To Their Pervasive Unconscionability ..................................................................................................... 21

    G.     Even If The 2023 Arbitration Agreement Was Formed, It Cannot Apply Retroactively ............................................................................................................. 22

    H.     Even If An Arbitration Agreement Was Formed, Plaintiffs' Claims Fall Outside The Scope Of The Arbitration Agreements ............................................................... 24

III.   CONCLUSION .............................................................................................................. 25

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Alkutkar v. Bumble Inc.*,
2022 WL 4112360 (N.D. Cal. Sep. 8, 2022)............................................................................. 16

*Atkins v. Amplitude, Inc.*,
2025 WL 2521732 (N.D. Cal. Sep. 2, 2025)............................................................................. 21

*Berman* v. Freedom Fin. Network, LLC,
30 F.4th 849 (9th Cir. 2022).......................................................................................... passim

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023)................................................................................................. 15

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015)................................................................................................ 13

*Carolus v. Coinbase Glob., Inc.*,
2025 WL 3033736 (N.D. Cal. Oct. 7, 2025)........................................................................... 21

*Castro v. ABM Indus., Inc.*,
2018 WL 2197527 (N.D. Cal. May 14, 2018).......................................................................... 24

*Cavanaugh v. Fanatics, LLC*,
738 F. Supp. 3d 1285 (E.D. Cal. 2024) ................................................................................ 5, 8

*Chabolla v. ClassPass Inc.*,
129 F. 4th 1147 (9th Cir. 2025).......................................................................................... passim

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015)................................................................................................. 23

*Connell v. ByteDance, Inc.*,
2025 WL 1828472 (N.D. Cal. July 1, 2025) ........................................................................... 22

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017)................................................................................. 12, 13

*Cruz v. Tapestry, Inc.*,
113 Cal. App. 5th 943 (2025).................................................................................................... 9

*Davis v. Experian Info. Sols., Inc.*,
2025 WL 2998157 (N.D. Cal. Oct. 24, 2025) ........................................................................ 21

*Eiess v. USAA Fed. Sav. Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019)................................................................................. 13, 14

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ..................................................................................................... 12, 13

*Flores v. Transamerica HomeFirst, Inc.*,
   93 Cal. App. 4th 846 (2001) .................................................................................................. 15

*Gill v. Chipotle Mexican Grill, Inc.*,
   2025 WL 287320 (C.D. Cal. Jan. 23, 2025) ............................................................................. 8

*Godun v. JustAnswer LLC*,
   135 F.4th 699 (9th Cir. 2025) .................................................................................... 1, 7, 10, 11

*Hale v. Brinker Int'l, Inc.*,
   2022 WL 2187397 (N.D. Cal. June 17, 2022) ........................................................................ 22

*Hansen v. LMB Mortg. Servs., Inc.*,
   1 F.4th 667 (9th Cir. 2021) ....................................................................................................... 1

*Heckman v. Live Nation Entertainment, Inc.*,
   120 F.4th 670 (9th Cir. 2024) ........................................................................................... 15, 19

*Heckman v. Live Nation Entertainment, Inc.*,
   686 F. Supp. 3d 939 (C.D. Cal. 2023) ........................................................................ 15, 16, 19

*Hooper v. Jerry Ins. Agency, LLC*,
   675 F. Supp. 3d 1027 (N.D. Cal. 2023) ................................................................................. 14

*Ingalls v. Spotify USA, Inc.*,
   2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) ....................................................................... 14

*Iravanian v. Translations.com, Inc.*,
   687 F. Supp. 3d 871 (N.D. Cal. 2023) .............................................................................. 16, 22

*Jackson v. Amazon.com, Inc.*,
   65 F.4th 1093 (9th Cir. 2023) ........................................................................................... 24, 25

*Jones v. Deja Vu, Inc.*,
   419 F.Supp.2d 1146 (N.D. Cal. 2005) ................................................................................... 23

*Keebaugh v. Warner Bros. Ent. Inc.*,
   100 F.4th 1005 (9th Cir. 2024) ............................................................................................ 2, 6

*Lag Shot LLC v. Facebook, Inc.*,
   2021 WL 2660433 (N.D. Cal. June 25, 2021) ........................................................................ 17

*Lee v. Plex, Inc.*,
   773 F. Supp. 3d 755 (N.D. Cal. 2025) ................................................................................... 10

*Lewis v. Kelly Servs. Glob. LLC*,
   2024 WL 5220080 (C.D. Cal. Nov. 7, 2024) ......................................................................... 14

*Lim v. TForce Logistics, LLC*,
  8 F.4th 992 (9th Cir. 2021) ........................................................................ 16, 19, 20, 21

*Long v. Fidelity Water Systems, Inc.*,
  2000 WL 989914 (N.D. Cal. May 26, 2000) ........................................................ 23

*Longboy v. Pinnacle Prop. Mgmt. Servs., LLC.*,
  718 F. Supp. 3d 1004 (N.D. Cal. 2024) .............................................................. 22

*Lopez v. Dave Inc.*,
  2023 WL 8594393 (9th Cir. Dec. 12, 2023) ......................................................... 8

*MacClelland v. Cellco Partnership*,
  609 F. Supp. 3d 1024 (N.D. Cal. 2022) .......................................................... 19, 22

*Magill v. Wells Fargo Bank, N.A.*,
  2021 WL 6199649 (N.D. Cal. June 25, 2021) ...................................................... 14

*Massel v. SuccessfulMatch.com*,
  718 F. Supp. 3d 1112 (N.D. Cal. 2024) ............................................................... 8

*McKeown v. SAS Retail Servs., LLC*,
  2025 WL 3563717 (N.D. Cal. Dec. 12, 2025) ...................................................... 22

*Meadows v. Dickey's Barbecue Restaurants Inc.*,
  144 F. Supp. 3d 1069 (N.D. Cal. 2015) .......................................................... 13, 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ....................................................................................... 1

*Mohamed v. Uber Technologies, Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ..................................................................... 16, 17

*Morse v. ServiceMaster Global Holdings Inc.*,
  2012 WL 4755035 (N.D. Cal. Oct. 4, 2012) ........................................................ 24

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ....................................................................... 3, 9, 12

*Nyulassy v. Lockheed Martin Corp.*,
  120 Cal. App. 4th 1267 (2004) ........................................................................ 18

*Oberstein v. Live Nation Ent., Inc.*,
  60 F.4th 505 (9th Cir. 2023) ....................................................................... 10, 11

*Oracle America, Inc. v. Myriad Group A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ...................................................................... 13, 14

*Pandolfi v. AviaGames, Inc.*,
  2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ................................................. passim

*Patrick v. Running Warehouse, LLC,*
  93 F.4th 468 (9th Cir. 2024) ................................................................................................ 11, 14

*Plata v. Lands' End, Inc.,*
  2024 WL 5339858 (C.D. Cal. Dec. 19, 2024) ............................................................................. 8

*Pokorny v. Quixtar, Inc.,*
  601 F.3d 987 (9th Cir. 2010) ................................................................................................... 18

*Quamina v. JustAnswer LLC,*
  721 F. Supp. 3d 1026 (N.D. Cal. 2024) ..................................................................................... 8

*Ramirez v. Trusper, Inc.,*
  2024 WL 4479862 (N.D. Cal. Oct. 11, 2024) ............................................................................ 8

*Rent-A-Center, W., Inc. v. Jackson,*
  561 U.S. 63 (2010) ................................................................................................................... 15

*Rios v. HRB Digital LLC,*
  --- F.Supp.3d ----, 2025 WL 3003768 (N.D. Cal. Oct. 27, 2025) ...................................... 16, 17

*Rivas v. CVS Pharmacy, Inc.,*
  2025 WL 2076634 (N.D. Cal. July 23, 2025) ........................................................................... 17

*Rocha v. Urb. Outfitters, Inc.,*
  2024 WL 393486 (N.D. Cal. Feb. 1, 2024) ................................................................................ 8

*Rushing v. Williams-Sonoma, Inc.,*
  2025 WL 2391394 (N.D. Cal. Aug. 18, 2025) ............................................................................ 7

*Sanford v. MemberWorks, Inc.,*
  483 F.3d 956 (9th Cir. 2007) ................................................................................................... 12

*Schlueter-Beckner v. SimpliSafe, Inc.,*
  2025 WL 2162948 (N.D. Cal. July 30, 2025) ....................................................................... 13, 14

*Sellers v. JustAnswer LLC,*
  73 Cal. App. 5th 444 (2021) ................................................................................................. 7, 12

*Serrano v. Open Rd. Delivery Holdings, Inc.,*
  666 F. Supp. 3d 1089 (C.D. Cal. 2023) ...................................................................................... 8

*Shugars v. Walmart Inc.,*
  2025 WL 786348 (N.D. Cal. Mar. 12, 2025) ............................................................................ 17

*Silver v. Stripe Inc.,*
  2021 WL 3191752 (N.D. Cal. July 28, 2021) ........................................................................... 11

*Tabas v. MoviePass, Inc.,*
  401 F. Supp. 3d 928 (N.D. Cal. 2019) ...................................................................................... 12

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
  925 F.2d 1136 (9th Cir. 1991) ........................................................................................... 12

*Tompkins v. 23andMe, Inc.*,
  2014 WL 2903752 (N.D. Cal. June 25, 2014)..................................................................... 13

*Turbin v. Thumbtack, Inc.*,
  2025 WL 3013972 (N.D. Cal. Oct. 28, 2025) ..................................................................... 16

*Williams v. DDR Media, LLC*,
  2023 WL 2314868 (N.D. Cal. Feb. 28, 2023)....................................................................... 8

**RULES**

Fed. R. Civ. P. 56 .......................................................................................................................... 1

## I. INTRODUCTION

Plaintiffs bring claims against Defendant Baby List, Inc. ("Defendant" or "Baby List") for straightforward violations of the California Invasion of Privacy Act. *See* Plaintiffs' Complaint ("Compl."), ECF No. 1. Rather than dispute the merits, Defendant filed a Motion to Compel Arbitration ("MTC") (ECF No. 22) asking the Court to enforce its sign-in wrap agreement. However, sign-in wraps "practically invite litigation over the enforceability of their sites' terms and conditions[.]" *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 868 (9th Cir. 2022). Indeed, the Ninth Circuit has repeatedly found nearly identical sign-in wraps to the sign-in "agreements" at issue here to be invalid and unenforceable to compel arbitration. *See id.*; *Chabolla v. ClassPass Inc.*, 129 F. 4th 1147, 1153 (9th Cir. 2025); *Godun v. JustAnswer LLC*, 135 F.4th 699, 710 (9th Cir. 2025).

Defendant seemingly brushes over the real issue here and asks the Court to make a series of findings regarding the delegation, scope, and conscionability of the relevant terms. However, the Court need not even touch on these arguments, as the circumstances in front of it are clear—no agreement to arbitrate exists in the first place. Because of this, as outlined below, the Court must end its inquiry after finding that an agreement to arbitrate does not exist.

## II. ARGUMENT

### A. Whether Plaintiffs Agreed To Arbitrate Is The Threshold Issue

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Baby List, as "[t]he party seeking to compel arbitration[,] bears the burden of proving the existence of an agreement to arbitrate by a preponderance of evidence." *Chabolla*, 129 F. 4th at 1153. In making this determination, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman*, 30 F.4th at 855. Here,

Plaintiffs are Californians who were in California at all material times and bring California law claims against Defendant, and so California law applies. *See Chabolla*, 129 F.4th at 1151 (applying California law under the same circumstances).

### B.      No Agreement To Arbitrate Was Formed

"In the world of internet contracts, there are browsewrap, clickwrap, scrollwrap, and sign-in wrap agreements, each of which purport to bind users through different 'assent' mechanisms." *Chabolla*, 129 F.4th at 1154. In the case of clickwrap and scrollwrap, those terms are "routinely enforced" because they both require a user to "click[] or check[] a box stating she agrees." *Id*. By forcing users to affirmatively click a box before being able to proceed further, it cannot be disputed whether the user agreed or not. On the other hand, for a sign-in wrap, which Defendant concedes is the form at issue here (MTC at 13), "the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Chabolla*, 129 F.4th at 1154. A sign-in wrap will only be enforceable "'based on inquiry notice if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Id*. at 1154-1155 (quoting *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024)).

Defendant dedicates merely a page and three citations to argue that its sign-in wrap is enforceable. MTC at 13-14. Defendant is wrong.

### 1.      *Plaintiffs were not given notice of the terms*

The Ninth Circuit has repeatedly held that for notice of the terms to be conspicuous, it "'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Chabolla*, 129 F.4th at 1155 (quoting *Keebaugh*, 100 F.4th at 1014 (quoting *Berman*, 30 F.4th at 856)). This requires a "traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design[.]" *Id*. (citations omitted).

Defendant argues that the terms were conspicuous simply because they were hyperlinked and presented in blue font for Plaintiff Davis, and black underlined text for Plaintiff Slaviero "against a contrasting light background." MTC at 12. This is hardly persuasive, and certainly not dispositive, as "the proximity or conspicuousness of the hyperlink alone is not enough to give rise to constructive notice[.]" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178 (9th Cir. 2014). In any event, "the fact that a hyperlink is present must be readily apparent." *Berman*, 30 F.4th at 857. "Simply underscoring words or phrases [] will often be insufficient to alert a reasonably prudent user that a clickable link exists." *Id*.

The Court should assess a comparison of the page layouts at issue in this case to page layouts the Ninth Circuit has previously rejected. Here, the following pages are directly at issue.

**2024 Sign Up Page**                    **2025 Sign Up Page**

*See* Declaration of Emily Levada in Support of Defendant's Motion (ECF No. 22-1) ("Levada Decl.") at 4. In *Chabolla*, the following two screens were at issue:





*See Chabolla v. ClassPass Inc.*, Case No. 23-15999, Dkt. 11 at 20-22. In *Berman*, the screens at issue were the following:





*Berman*, 30 F.4th at 849. These notices are arguably more conspicuous than the notices at issue here, yet the Ninth Circuit still found them to be insufficient. *See Chabolla*, 129 F.4th at 1157 ("Because of the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color, we find that it is 'deemphasized by the overall design of the webpage' and not 'prominently displayed[.]'") (quoting *Berman*); *Berman*, 30 F.4th at 857 ("The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text.").

Similarly, the notice at issue *Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1291 (E.D. Cal. 2024), which the Court found insufficient based on *Berman* and its progeny, is nearly identical to (although arguably better than) the notices at issue here:



*Compare Fanatics*, 738 F. Supp. 3d at 1292 with Levada Decl. at 4-5. In *Fanatics*, the Court held that "the account creation screen failed to provide sufficient notice of the arbitration agreement," because "the Court will not depart from the overall trend that finds hyperlinks must be offset in a more obvious way than the underlining used on the Fanatics sign-up page at issue in this case." 738 F. Supp. 3d at 1296.

Against this backdrop, the facts here do not show that an agreement to arbitrate exists. The Court must consider whether factors "'such as font size, text placement, and overall screen design' [] provides reasonably conspicuous notice of the terms of an agreement." *Chabolla*, 129 F.4th at 1155 (quoting *Keebaugh*, 100 F.4th at 1019). Regarding the February 7, 2024 sign up page (shown to Plaintiff Davis), the "terms of use" and "privacy policy" are entirely in lower case:



Levada Decl. at 4. The use of uppercase letters in the English language in a context such as this is to refer to a proper noun or something otherwise specific or official. Lowercase words, on the other hand, signify something non-specific or official. This is common knowledge learned in elementary school and seen in everyday life. In light of this, a "reasonably prudent Internet user," as opposed to "the expert user," would not think that such unofficial, casual reference to the *lowercase* "terms of use" and "privacy policy" would be a clickable link, regardless of font color. *Berman*, 30 F.4th at 857 ("Because our inquiry notice standard demands conspicuousness tailored to the reasonably prudent Internet user, not to the expert user, the design of the hyperlinks must put such a user on notice of their existence."). This is especially true given the 2024 sign up page also did not

underline "terms of use" or "privacy policy." Indeed, "a hefty dose of common sense goes a long way," when analyzing the conspicuousness of terms. *Godun*, 135 F.4th at 710. And Defendant's belief that its use of different colored font will provide it shelter is of no import, all things considered. *Rushing v. Williams-Sonoma, Inc.*, 2025 WL 2391394, at *9 (N.D. Cal. Aug. 18, 2025) (Orrick, J.) (holding that hyperlinked terms were not sufficiently conspicuous despite "using the customary blue font" because of "the organization of the page."). "Consumers cannot be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to 'ferret out hyperlinks.'" *Berman*, 30 F.4th at 857.

Relatedly, the September 25, 2025 sign up page (shown to Plaintiff Slaviero) fares no better.



Levada Decl. at 5. While Defendant chose to incorporate uppercase letters at that point and underline the links, "[a] web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently 'set apart' from the surrounding text." *Berman*, 30 F.4th at 857 (citing *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021)). Indeed, In the wake of *Berman*,

numerous courts in the Ninth Circuit have held that terms only differentiated by underlining are not reasonably conspicuous. *See, e.g.*, *Lopez v. Dave Inc.*, 2023 WL 8594393 (9th Cir. Dec. 12, 2023) ("although the term 'TOS' is underlined, this alone is 'insufficient to alert a reasonably prudent internet user that a clickable link exists.'") (citing *Berman*); *Massel v. SuccessfulMatch.com*, 718 F. Supp. 3d 1112, 1121 (N.D. Cal. 2024) ("Because Millionaire Match's links were underlined but did not appear in a contrasting color, the Court must conclude, under *Berman*, that they were not reasonably conspicuous."); *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023) ("the failure to identify the hyperlink to Defendant's Terms of Use by more than mere underlining is highly significant under *Berman*."); *Quamina v. JustAnswer LLC*, 721 F. Supp. 3d 1026, 1038-39 (N.D. Cal. 2024) ("the terms were, once more, not reasonably conspicuous because the hyperlinked terms were only underlined.") (citing *Berman*); *Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1296 (E.D. Cal. 2024) ("hyperlinks must be offset in a more obvious way than the underlining used on the Fanatics sign-up page at issue in this case."); *Rocha v. Urb. Outfitters, Inc.*, 2024 WL 393486, at *4 (N.D. Cal. Feb. 1, 2024) ("notice was insufficient because the hyperlinks' existence was not readily apparent as the hyperlinks' 'sole distinguishing feature is an underline.'"); *Ramirez v. Trusper, Inc.*, 2024 WL 4479862, at *5 (N.D. Cal. Oct. 11, 2024) (finding terms were insufficiently conspicuous because "the words 'terms page' [were] merely underlined with no other distinguishing design or capitalization."); *Plata v. Lands' End, Inc.*, 2024 WL 5339858, at *3 and *5 (C.D. Cal. Dec. 19, 2024) (finding terms were not reasonably conspicuous because "[s]imply underscoring words or phrases ... will often be insufficient," and the "hyperlink is the same color, size, and style of font as the rest of the text.") (citing *Berman*); *Williams v. DDR Media, LLC*, 2023 WL 2314868, at *5 (N.D. Cal. Feb. 28, 2023) ("The Court also finds that the Terms of Use hyperlink is not 'readily apparent' to a reasonably prudent user. Here, the hyperlink is underlined, but it is not in the traditional blue, nor is it all capitalized or otherwise distinguishable from the surrounding text.") (citing *Berman*); *Gill v. Chipotle Mexican Grill, Inc.*, 2025 WL 287320, *4 (C.D. Cal. Jan. 23, 2025) ("'the failure to clearly denote the hyperlinks here fails the Ninth Circuit's conspicuousness test.'… the hyperlinks are merely underlined.") (internal brackets omitted) (citing *Berman*).

Moreover, on both the 2024 and 2025 sign-up pages, there is a check box above the Sign Up button asking users to click the box if they would like to receive promotions (click-wrap agreement). *See* Levada Decl. at 4-5. For the 2025 sign-up page, this is in significantly larger font than the sign-in wrap disclosure on the bottom of the page. *Id*. at 5. The Ninth Circuit has clearly instructed that "[w]ebsite users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857. Where the Ninth Circuit in *Berman* found that "comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else," here, the design is even more egregious. *Id*. A user of Defendant's website would clearly have their attention directed towards the check box directly above the Sign Up button that explicitly invites them to take an affirmative action, as opposed to smaller text at the bottom of the screen. That same user would also "assume" that any other "important provisions" would be presented to them in the same way. Again, "[a] webpage must take steps to capture the user's attention and secure [his or] her assent [to the terms at issue], instead of utilizing a design that draw[s] the user's attention away from notice of those terms." *Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, 952 (2025) (quoting *Berman,* 30 F.4th at 857) (cleaned up). Relevant here, "the fields for information to be entered in the" sign-up page "appear in a graphic comprised of several boxes" and "the transaction cannot be completed unless the consumer provides the information requested in those fields." *Id*. at 959. While Defendant has "utilized a graphical interface to ensure a consumer supplies [] information, they have not done the same to alert a consumer to the Terms of Use (*e.g.*, by requiring a consumer to check a box next to the notice text)." *Id*. Clearly then, "the overall design of the webpage [] [has] visual elements [that] draw the user's attention away … from the most important part of the page." *Berman*, 30 F.4th at 857 (cleaned up) (citing *Nguyen*, 763 F.3d at 1178).

Additionally, there is text below the Sign Up button that separates the button from the sign-in wrap disclosure on both the 2024 and 2025 sign-up pages. Levada Decl. at 4-6. Of note, the text that separates the Sign Up button from the sign-in wrap disclosure has a lock symbol (more distraction) next to it and notifies users about the privacy of their registry. *Id*. The terms do not "interrupt[] the natural flow of the action items," which would have made it easier for users to notice them. *Chabolla*, 129 F.4th at 1157 (citing *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023)). Courts continuously hold that notice is not reasonably conspicuous when it is not directly above or below the button users must click to proceed. *See Oberstein*, 60 F.4th at 517 (finding the notice to be reasonably conspicuous because it was "not buried on the bottom of the webpage or placed outside the action box, but rather were located directly on top of or below each action button."); *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 766 (N.D. Cal. 2025) (finding the notice not reasonably conspicuous because it "was placed at the very bottom of the visible page, far below the 'Continue with Facebook' button that Plaintiff clicked to create his account."). Indeed, in *Godun*, 135 F.4th at 711, the Ninth Circuit explicitly held the notices at issue to not be conspicuous, regardless of the font color, solely because the "advisal is not [] located directly above or below the action button and is displayed in relatively small text." And even in *Godun*, the relevant screen provides arguably better notice than the ones at issue here (*see* next page):



*Godun*, 135 F.4th at 705.

Defendant's authority does not change this. In *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 474 (9th Cir. 2024) the Ninth Circuit found the notice to be conspicuous because it was "immediately adjacent to this final button on each website." Similarly, in *Oberstein*, 60 F.4th at 517, the court found that a "reasonable user would have seen the notice and been able to locate the Terms via hyperlink" because it was shown to the users on three different screens, and each time it was shown "directly on top of or below each action button." Lastly, in *Silver v. Stripe Inc.*, 2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021), which was decided prior to the on point Ninth Circuit decisions in *Chabolla*, *Keebaugh*, *Berman*, and *Oberstein*, the court found that the hyperlink to the privacy policy was located close enough to the "place order" button, making it "hard for a user placing an order to miss it." The same cannot be said here.

Based on these facts, and the Court's duty to apply the standard for summary judgment and give Plaintiffs "the benefit of all reasonable doubts and inferences that may arise," the Court must

find that an agreement to arbitrate does not exist. *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 936 (N.D. Cal. 2019) (quoting *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007)); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) (finding that, for an arbitration dispute regarding contract formation, "[t]he party opposing arbitration shall receive the benefits of all reasonable doubts and inferences."); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("Only when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."). Indeed, because "online providers have complete control over the design of their websites," *Sellers*, 73 Cal. App. 5th 444, "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Nguyen*, 763 F.3d at 1179. Here, because Defendant, as "designer of the webpages at issue here[,] did not take that obligation to heart," the Court must find Plaintiffs did not have notice of the terms and therefore did not unambiguously assent to the terms. *Berman*, 30 F.4th at 857.

Because the Court must find an agreement to arbitrate does not exist, the inquiry ends there and Plaintiffs' claims must proceed in court.[1]

### C. There Is No "Clear and Unmistakable" Evidence That The Parties Agreed To Arbitrate Issues of Arbitrability

Defendant argues that the Parties have agreed to "delegate all issues of arbitrability" because both the 2023 and 2025 Terms "expressly incorporate the JAMS rules" by reference, which "assign gateway issues to the arbitrator. MTC. at 11-12. Defendant's argument fails.

Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 131 L. Ed. 2d 985 (1995). Here, Defendant does not provide clear and unmistakable evidence that the Parties agreed to delegate arbitrability issues.

---

[1] The remainder of this brief is submitted in the unlikely event that the Court rejects Plaintiffs' arguments concerning notice and creation of an agreement to arbitrate.

### 1. The incorporation of JAMS Rules does not amount to "clear and unmistakable" evidence because Plaintiffs are unsophisticated parties.

"[R]ecognizing the delegation" based on the incorporation of arbitration rules "would require the Court to declare a finding that [the plaintiff] unmistakably intended to delegate the 'rather arcane' arbitrability question, simply by clicking a button. Such an inference defies common experience" in cases where at least one of the parties is an unsophisticated party. *Schlueter-Beckner v. SimpliSafe, Inc.*, 2025 WL 2162948, at \*7 (N.D. Cal. July 30, 2025), appeal docketed, No. 25-4933 (9th Cir. Aug. 5, 2025) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (9th Cir. 1995)). And while the Ninth Circuit in *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) and *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013), found incorporating arbitration rules sufficient to "evince a 'clear and unmistakable' intent to delegate[,]" the Ninth Circuit "left open the question of whether the same rule would apply when fewer than all the parties to an arbitration agreement were sophisticated." *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015).

In *Cordas v. Uber Technologies, Inc.*, 228 F.Supp.3d 985, 992 (N.D. Cal. 2017), this Court held that the incorporation of AAA rules in a consumer contract was "clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability" given the "weight of authority" supporting this finding. In reaching its conclusion, the Court stated that "one notable decision in this District has held incorporation by reference of the AAA rules in a consumer contract did not amount to clear and unmistakable evidence" but that this case was decided "before *Brennan*." *Id.* (referring to *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at \*11 (N.D. Cal. June 25, 2014)).

However, since *Cordas*, multiple post-*Brennan* cases in this Circuit have found that incorporation of arbitration rules is not clear and unmistakable evidence of intent to delegate when one of the parties is unsophisticated. For example, in *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019) (cleaned up), the court agreed "with the majority of district courts in the Ninth Circuit" that "[a]lthough incorporation by reference may fairly be deemed a clear and unmistakable delegation where there are sophisticated parties, a different result may obtain where one party is unsophisticated." The court reasoned that this finding means the unsophisticated party

must "locate the arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the importance of a specific rule granting the arbitrator jurisdiction over questions of validity – a question the Supreme Court itself has deemed 'rather arcane.'" Based on this reasoning, the *Eiess* court found that incorporation of the arbitration rules did not show that the plaintiff "clearly and unmistakably agreed to delegation, particularly in the absence of any evidence that she possesses a heightened level of sophistication." *Id.* at 1254; *see also SimpliSafe*, 2025 WL 2162948, at *7 ("this inference would assume that …[the plaintiff] viewed the lengthy agreement … on his phone, noticed the incorporation of the AAA rules, located and pulled up those rules …, and found the delegation rule therein. Such a scenario is unreasonable for the average consumer with no legal experience."); *Hooper v. Jerry Ins. Agency, LLC*, 675 F. Supp. 3d 1027, 1039-40 (N.D. Cal. 2023); *Magill v. Wells Fargo Bank, N.A.*, 2021 WL 6199649, at *5 (N.D. Cal. June 25, 2021); *Lewis v. Kelly Servs. Glob. LLC*, 2024 WL 5220080, at *4 (C.D. Cal. Nov. 7, 2024), appeal docketed, No. 24-7483 (9th Cir. Dec. 12, 2024); *Meadows*, 144 F. Supp. 3d at 1078 (decided prior to *Cordas* but <u>after</u> *Brennan*); *Ingalls v. Spotify USA, Inc.*, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016) (same).

Here, Plaintiffs are consumers who have no legal training or experience with reading and/or interpreting contracts. Defendant's lack of evidence of Plaintiffs' sophistication, and volume of cases finding incorporation of arbitration rules insufficient evidence of intent to delegate for unsophisticated parties, the Court should find Plaintiffs did not clearly and unmistakably intend to delegate arbitrability issues.

Defendant cites *Patrick v. Running Warehouse*, 93 F.4th 468, 481 (9th Cir. 2024) but it is distinguishable because there, the agreement explicitly referenced which JAMS rules applied and provide a link to the rules. Further, the court in *Patrick* acknowledged that "[o]ur circuit has not yet decided whether *Brennan*'s holding should extend to arbitration clauses in consumer contracts between a sophisticated entity and an average unsophisticated consumer" but ultimately found that because the Plaintiffs offered "no evidence concerning their sophistication or lack thereof to the district court[,]" the court "need not decide the issue in order to resolve this case." *Id. Oracle Am.,*

*Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) is also distinguishable because both parties were sophisticated and agreed to particular arbitration rules.

Thus, the Court should find Plaintiffs did not clearly and unmistakably intend to delegate arbitrability issues based on the (purported) incorporation of the JAMS rules.

### D. The Delegation Clause Is Unconscionable

Defendant argues that the 2025 Terms include a delegation clause:

> In addition, all disputes concerning the arbitrability of a claim (including disputes about the scope, applicability, enforceability, revocability, or validity of the Arbitration Agreement) shall be decided by the arbitrator

Levada Decl., Ex. B at 9.

Nonetheless, the Court has jurisdiction to examine "whether the delegation provision [itself] is valid." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Here, the 2025 Agreement's delegation clause is unconscionable and thus unenforceable. "In evaluating an unconscionability challenge to a delegation provision … a court must be able to interpret the provision in the context of the agreement as a whole, which may require examining the underlying arbitration agreement as well." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1012 (9th Cir. 2023). That is because "if a court cannot look through the delegation provision to the rest of the contract, a court would fail to see how delegating questions of arbitrability to an arbitrator was unconscionable." *Id.*

### 1. *The delegation clause is procedurally unconscionable*

The delegation provision is procedurally unconscionable because it includes elements of adhesion, oppression, and surprise. *First*, the delegation clause is unconscionable because it is contained in a "contract of adhesion"—*i.e*, "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 681 (9th Cir. 2024) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). Both elements of surprise and oppression are satisfied when an agreement is "presented on a take-it-or-leave-it basis[.]" *Heckman v. Live Nation Entertainment, Inc.*, 686 F. Supp. 3d 939, 952 (C.D. Cal. 2023), aff'd, 120 F.4th 670 (9th Cir. 2024). Here, the 2025

Agreement, and the delegation provision within, was offered to consumers like Plaintiff Slaviero, by a party with superior bargaining power (Defendant) and Plaintiff Slaviero had no opportunity to negotiate the terms, including the delegation provision, meaning the 2025 Agreement and delegation provision are adhesive. *See id.*

*Second*, the delegation clause has an element of surprise because it is buried in the 2025 Terms, nine pages into the document, includes no markers to call attention to the delegation provision itself, is not titled, is in the middle of single-spaced paragraphs, and had no requirement for Plaintiff Slaviero to sign or initial that specific delegation provision. *See* Levada Decl., Ex. B at 9; *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *4 (N.D. Cal. Sept. 4, 2024), aff'd, 2025 WL 2463742 (9th Cir. Aug. 27, 2025); *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021); *Iravanian v. Translations.com, Inc.,* 687 F. Supp. 3d 871, 878 (N.D. Cal. 2023). Thus, the delegation clause is procedurally unconscionable.

Defendant may argue that the delegation clause, embedded in the arbitration clause, is not adhesive, given the opt-out clause in the 2025 Agreement. *See* MTC at 16 (arguing the 2025 Agreement is not adhesive give the presence of the opt-out clause). But this argument fails because "the existence of an opt-out clause does not automatically render an arbitration agreement procedurally conscionable; even if an agreement is not adhesive, it can still be found sufficiently surprise-laden or oppressive to implicate procedural unconscionability." *Rios v. HRB Digital LLC*, --- F.Supp.3d ----, 2025 WL 3003768, at *7 (N.D. Cal. Oct. 27, 2025), appeal docketed, No. 25-7199 (9th Cir. Nov. 14, 2025).

Defendant cites *Turbin v. Thumbtack, Inc.*, where the court concluded that a "meaningful opt-out clause generally renders an agreement non-adhesive" but it nonetheless noted that the court still "examines whether the totality of the circumstances show oppression and surprise"—meaning the opt-out clause is not the end of the procedural unconscionability analysis. 2025 WL 3013972, at *4 (N.D. Cal. Oct. 28, 2025). Defendant also cites *Alkutkar v. Bumble Inc.*, 2022 WL 4112360, at *9 (N.D. Cal. Sep. 8, 2022) but this case was wrongly decided because it relies on an erroneous interpretation of *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016)—"that an

opt-out clause categorically shields an agreement from a finding of procedural unconscionability" which is inconsistent with California law. *Rios*, 2025 WL 3003768 at *8. *See also Lag Shot LLC v. Facebook, Inc.*, 2021 WL 2660433 (N.D. Cal. June 25, 2021) (also relying on an erroneous interpretation of *Mohamed*); *Shugars v. Walmart Inc.*, 2025 WL 786348, at *6 (N.D. Cal. Mar. 12, 2025) (same); *Rivas v. CVS Pharmacy, Inc.*, 2025 WL 2076634, at *4-5 (N.D. Cal. July 23, 2025) (not citing *Mohamed* but relying on the same reasoning that an opt-out provision will extinguish procedural unconscionability). Further, *Rivas v. CVS Pharmacy, Inc.* is further distinguishable because there, the plaintiff signed the arbitration agreement assenting to the "Statement of Assent and Understanding" which again noted the right to opt-out, which did not happen for the 2025 Agreement here. 2025 WL 2076634, at *3.

### 2.    *The delegation clause is substantively unconscionable*

#### (a)    Pre-Arbitration Demand

The delegation clause is also substantively unconscionable because several of the conditions precedent *for reaching an arbitrator* are themselves unconscionable. The 2025 Agreement includes an Informal Dispute Resolution clause requiring consumers to send Defendant a mailed "Pre-Arbitration Demand" "prior to initiating arbitration" to "address any disputes without the need for arbitration." Levada Decl. Ex. B at 26. The clause makes the Pre-Arbitration Demand a mandatory prerequisite to submitting an arbitration claim. *Id.* If the Pre-Arbitration Demand "is not resolved within sixty (60) calendar days" then "arbitration may then be filed." *Id.*

In effect, the mandatory Pre-Arbitration Demand requirement must occur before a consumer can even reach an arbitrator, and thus, there is no occasion for the arbitrator to decide the enforceability of this requirement. This requirement also imposes delay on a consumer's ability to bring a timely arbitration claim because it delays the process by sixty days and the 2025 Agreement limits the timeline to file a claim to one year "after the cause of action arose"—not one year after the sixty days passes. *Id.* (not tolling the limitations period during the Pre-Arbitration Demand period). In effect, the limitations period is shortened to eight months.

Further, the Pre-Arbitration Demand gives Defendant a "free peek at [] [P]laintiff[s'] case, thereby obtaining an advantage if and when [] [P]laintiff[s] were to later demand arbitration." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 998 (9th Cir. 2010) (cleaned up); *see also Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1283 (2004) (same).

(b) <u>Mass Arbitrations Clause</u>

The delegation clause is also substantively unconscionable because the Mass Arbitrations clause in the 2025 Agreement includes a bellwether provision. At the time of contract formation, the delegation clause taken together with the bellwether provision has a chilling effect on [consumers]." *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *3 (N.D. Cal. Sept. 4, 2024), aff'd, 2025 WL 2463742 (9th Cir. Aug. 27, 2025).

*First*, "it is predictable that a [consumer] could have a dispute with [Defendant]" just like Plaintiffs do, "that applies across-the-board to *all*" because individuals who create a baby registry must go through the "Account Creation Flow," answer the questionnaire, and thus, their communications are also intercepted by the Third Parties. *See Pandolfi*, 2024 WL 4051754, at *6; MTC at 2; Levada Decl. ¶ 5. *Second*, because many other consumers will likely have the same claims against Defendant, "there will likely be "coordination of all arbitrating" consumers, "regardless of who the [consumers'] lawyers are" or more practically, these similar claims would likely be brought to arbitration "by the same law firms" representing "a multitude of claimants." *See Pandolfi*, 2024 WL 4051754, at *6.

Thus, the Mass Arbitrations clause for claims like Plaintiffs, will likely be triggered. Since the bellwether provision only allows for 10 cases to proceed at any given time and will be resolved "individually by different arbitrators," as Defendant admits, there will "likely be a delay in resolution of the [consumers'] claims" including on the gateway issue of delegation of arbitrability. *See* Levada Decl., Ex. B. at 10; *see Pandolfi*, 2024 WL 4051754, at *6. "That prospect of delay – on the limited gateway issue alone – likely has a chilling effect on [consumers], deterring them from vindicating their rights. *See Pandolfi*, 2024 WL 4051754, at *6. Accordingly, the Court should find that the delegation clause "unconscionably delays adjudication of claims" and that both

the delegation and Mass Arbitrations clauses are substantively unconscionable. *See id.*; *see also Heckman v. Live Nation Entertainment*, 686 F. Supp. 3d 939, 951–52 (C.D. Cal. 2023), aff'd, 120 F.4th 670 (9th Cir. 2024).

The delegation and Mass Arbitrations clauses are also substantively unconscionable because the mass arbitrations provision poses a risk that "claims will be effectively barred when coupled with the statute of limitations." *MacClelland v. Cellco Partnership*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022). Particularly, the Mass Arbitrations clause does not include a tolling provision but does require that all claims besides the first batch of 10 will need to wait to be heard while the first batch is pending. *See* Levada Decl., Ex. B at 27. This, coupled with the one-year limitations period (essentially eight months period as discussed above), will result in consumers timing out while waiting to be heard and thus be "forever barred." *MacClelland*, 609 F. Supp. 3d at 1042.

In sum, because of the procedural unconscionability of the delegation clause and because of the issues raised by the Pre-Arbitration clause and Mass Arbitrations Clause, the delegation clause is also substantively unconscionable and thus, on balance, unenforceable.

### E.   The Agreements Are Unconscionable

As discussed above, "[b]ecause the delegation clause is not enforceable, the Court (and not the arbitrator) decides the gateway issue of whether the broader arbitration agreement is unconscionable and therefore unenforceable." *Pandolfi*, 2024 WL 4051754, at *9.

The 2025 Agreement is procedurally unconscionable as described in Section II.D.1. above. The 2025 Agreement is substantively unconscionable on the "same bases for concluding that the delegation clause [is] … substantively unconscionable[.]" *See Lim*, 8 F. 4th at 1006; *see also Heckman*, 120 F.4th at 688.  Thus, the 2025 Agreement is unconscionable on balance.

The 2023 Agreement is also procedurally unconscionable. It includes the same element of oppression and adhesion as the 2025 Agreement and delegation clause. *See* Section II.D.1. Additionally, it has an element of surprise because even though the 2023 Agreement includes the language, "PLEASE READ THE DISPUTE SECTION BELOW[,]" at the beginning of the terms, the "dispute section" is buried underneath the heading "**Miscellaneous.**" *See* Levada Decl. Ex. A at

10, 16 (emphasis added). Nesting the arbitration clause under the Miscellaneous label makes it easy for people to overlook the arbitration clause, creating an element of surprise.

The 2023 Agreement is substantively unconscionable because it includes a fee-shifting provision: "[t]he prevailing party in any arbitration or other proceeding arising under this Agreement shall be entitled to receive reimbursement of its reasonable expenses (including reasonable attorneys' fees, expert witness fees and all other expenses) incurred in connection therewith." Levada Decl. Ex. A at 17. Thus, by filing an arbitration claim, a consumer risks the great expense of paying Defendant's arbitration fees, resulting in a chilling effect. *See Lim*, 8 F.4th at 1003. Further, consumers like Plaintiffs would bear costs they would otherwise not bear if they proceeded in court instead. *See id.*

Accordingly, on balance, the 2023 Agreement is unconscionable and thus unenforceable.

### 1. *Defendant's arguments to the contrary fail*

In arguing the Agreements are not substantively unconscionable, Defendant first attempts to distinguish *Pandolfi*. MTC at 19-22. But these differences do not change the unconscionability of the Agreements. Defendant distinguishes the bellwether provision because after the first batch of 10 cases, the 2025 Agreement does not limit "the number of claims that can be batched at once." MTC at 21. This distinction is meaningless because consumers who wish to file claims will still not know, at the time the contract was (supposedly) formed, whether their claims will be chosen for the first batch of 10 cases. The prospect of delay and its chilling effect is the substantive unconscionability. *See Pandolfi*, 2024 WL 4051754, at *6 (discussing the prospect of delay's chilling effect). Further, even if the "threshold for triggering the bellwether provision is three times higher than Avia's[,]" MTC at 21, as discussed, all Website users that created a baby registry have likely suffered the same harms Plaintiffs did, and so, this threshold is likely easily met. *See Pandolfi*, 2024 WL 4051754, at *6. Defendant also points to the appointment of a process administrator as proof of the 2025 Agreement's aim at efficiency. MTC at 21. But as described above, this appointment raises due process concerns and weighs for finding unconscionability.

Defendant then argues that other district courts after *Pandolfi* "have enforced arbitration agreements more restrictive and more likely to cause delay than Babylist's 2025 Arbitration Agreement." MTC at 22. But these cases don't change the outcome here. Contrary to Defendant's contention that *Davis v. Experian Info. Sols., Inc.*, 2025 WL 2998157, at *7 (N.D. Cal. Oct. 24, 2025) is a case where the court compelled arbitration "despite delegation clause and bellwether provision" the agreement in this case did "not contain any bellwether provision" so Defendant's analogy fails. MTC at 22; 2025 WL 2998157, at *6. Defendant cites *Carolus v. Coinbase Glob., Inc.*, 2025 WL 3033736, at *2, 10 (N.D. Cal. Oct. 7, 2025) for the contention that it distinguishes *Pandolfi* and compelled "arbitration despite the presence of a delegation clause and bellwether provision that required repeating batches of 100 claims at a time." MTC at 22. Defendant's argument omits the fact that *Pandolfi* was distinguished because the Carolus plaintiff used it to argue that the AAA rules themselves were unconscionable, which *Pandolfi* did not support. *See Carolus*, 2025 WL 3033736, at *13. Regarding the delegation clause, the plaintiff only made one argument about the unconscionability of the delegation—that the "Supplementary Rules … could bar future claimants from challenging the Delegation Clause"—which is not at issue here. *Id.* at *6. Defendant further cites *Atkins v. Amplitude, Inc.*, 2025 WL 2521732, at *4-5 (N.D. Cal. Sep. 2, 2025) but *Atkins* is distinguishable because the agreement there did not call for one batch of a small number of claims to proceed first while any other claims are paused, but instead called for batches of 100 claims.

In sum, Defendant's authorities do not alter the conclusion that the delegation clause and Agreements are substantively unconscionable.

### F.      The Court Must Invalidate The Entire Agreements Due To Their Pervasive Unconscionability

"[A]n arbitration agreement permeated by unconscionability, or one that contains unconscionable aspects that cannot be cured by severance, restriction, or duly authorized reformation, should not be enforced." *Lim*, 8 F.4th at 992. Given the pervasive unconscionability of the Agreements, the Court should strike the entire Agreements instead of severing. Here, the

Agreements contain various provisions that create a chilling effect and are thus "substantively unconscionable," permeating the "entire agreement[s]." *Iravanian*, 687 F. Supp. 3d at 880; *See* Sections D and E. Even if the only substantively unconscionable aspect was the fee-shifting provision, for example, that would still require invalidation instead of severance because of the chilling effect of those provisions. *See Hale v. Brinker Int'l, Inc.*, 2022 WL 2187397, at *1 (N.D. Cal. June 17, 2022) ("Even though the cost-splitting provision is the only substantively unconscionable provision of the agreement, it remains consequential. Cost-and fee-shifting provisions can create a chilling effect[.]"); *Pandolfi*, 2024 WL 4051754, at *9 ("Severance does not cure the problematic chilling effect of the unconscionable bellwether provision."). Further, the existence of the severability clause does not change the fact that where an agreement is permeated by unconscionability, a court will not sever the unlawful provisions." *MacClelland*, 609 F. Supp. 3d at 1045.

Defendant argues unconscionable portions should be severed and cites various cases to support its position. MTC at 23. However, these cases do not deal with unconscionability that causes a chilling effect, as is the case here. *See McKeown v. SAS Retail Servs., LLC*, 2025 WL 3563717, at *9 (N.D. Cal. Dec. 12, 2025) (not discussing the chilling effect); *Longboy v. Pinnacle Prop. Mgmt. Servs.*, *LLC*., 718 F. Supp. 3d 1004, 1020-21 (N.D. Cal. 2024) (only unconscionable aspect was the provision shortening the limitations period to one year, not other provisions that cause chilling effects); *Connell v. ByteDance, Inc.*, 2025 WL 1828472, at *16 (N.D. Cal. July 1, 2025) (the only unconscionable aspect of the delegation clause was a "single provision carving out equitable relief from arbitration[.]").

Accordingly, due to the pervasive chilling effect permeating across the Agreements, the Court should find pervasive unconscionability throughout the Agreements that cannot be cured with severance, and thus, should invalidate the Agreements.

### G.    Even If The 2023 Arbitration Agreement Was Formed, It Cannot Apply Retroactively

Even if Plaintiff Davis were bound by the 2023 Agreement, her communications were

intercepted, and thus, claims arose, *before* she signed up for a Babylist account and purportedly agreed to the 2023 Agreement. *See* Declaration of Emily Levada, ECF No. 22-1 ¶ 12 ("*After* completing the questionnaire, visitors are directed to a signup page") (emphasis added); Compl. ¶¶ 70-75 (specifying that Plaintiffs' and Class Members' communications were intercepted while they answered the onboarding survey questions).

"The FAA recognizes that agreements to prospectively arbitrate future disputes, as well as agreements to retroactively arbitrate past or present disputes, are enforceable. However, the act *explicitly distinguishes between the two*." *Long v. Fidelity Water Systems, Inc.*, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000) (emphasis added). Thus, for an arbitration clause to apply retroactively, it must "clearly and unequivocally" indicate the same. *Id.* at *4.

The language of the 2023 Agreement does not "clearly and unequivocally" indicate that the arbitration clause applies retroactively. *See Long*, 2000 WL 989914 at *4. In fact, when comparing the language of the 2023 Agreement to the 2025 Agreement, it is apparent that Defendant knew how to include clear and unequivocal language of retroactive application but did not do so in the 2023 Agreement. *See* Levada Decl., Ex. B at 26 (stating "'all claims and disputes' also includes claims and disputes that arose or involve facts between us *before the effective date* of these Terms") (emphasis added); *id.*, Ex. A at 17 (omitting clear language of retroactive application). Therefore, Plaintiff Davis's claims are not subject to arbitration. *See Long*, 2000 WL 989914, at *3; *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966-967 (2015).

Should the Court follow the competing approach, that determining whether the arbitration agreement applies retroactively is based on the inclusion of language setting a "temporal limitation," *Jones v. Deja Vu, Inc.*, 419 F.Supp.2d 1146, 1150 (N.D. Cal. 2005), Plaintiff's Davis's claims still fall outside of the 2023 Agreement. This agreement includes forward-looking temporal limitation language: "*In the event a dispute arises* between You and Babylist … [a]ny dispute arising from or relating to the subject matter of these Terms shall be finally settled by arbitration …" Levada Decl., Ex. A at 17 (emphasis added). This language imposes a forward-looking temporal limitation because it contemplates what a consumer who agreed to the terms must do if a

future dispute, that has not yet arisen, occurs. *See id.* It does not contemplate past disputes that arose prior to the agreement. *See Castro v. ABM Indus., Inc.*, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) (finding language "whenever they arise," was a temporal limitation only covering "present and future, but not past, conduct"); *Morse v. ServiceMaster Global Holdings Inc.*, 2012 WL 4755035, at *4 (N.D. Cal. Oct. 4, 2012).

Accordingly, the Court should deny Defendant's Motion as to Plaintiff Davis's claims.

### H.    Even If An Arbitration Agreement Was Formed, Plaintiffs' Claims Fall Outside The Scope Of The Arbitration Agreements

Even assuming Plaintiffs agreed to arbitrate, Defendant has the burden to show that Plaintiffs' claims fall within the scope of the Arbitration Agreements. Defendant argues Plaintiffs' "claims arise out of and relate directly to the Terms" because Plaintiffs' claims arise out of "Plaintiffs' use of the Babylist website, which flow from Plaintiffs' allegation that they each created a Babylist account." MTC at 15. Defendant is wrong.

The Ninth Circuit's decision in *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023) is instructive. There, the arbitration clause encompassed "any dispute or claim arising out of or relating in any way to this Agreement, including participation in the program or performance of services." *Jackson*, 65 F.4th at 1095 (cleaned up). Despite this broad language, the Ninth Circuit concluded that "Amazon's alleged misconduct [—wiretapping—] existed independently of the contract and therefore fell outside the scope of the arbitration provision in the [terms of service agreement]." *Id.* at 1104.

Here too, Plaintiffs' CIPA claims exist independent of the 2023 and 2025 Terms. Plaintiffs' claims involve Plaintiffs' providing survey answers to Defendant and Defendant's enabling the third parties' interception of Plaintiffs' communications—all prior to Plaintiffs' Babylist account creation and use of Defendant's online baby registry service. *See generally* Complaint. In other words, Plaintiffs would still have a claim had they never created a Babylist account or used the Babylist registry services. *See Jackson*, 65 F.4th at 1104. Therefore, Plaintiffs' claims exist

independently of and are "not dependent on [and therefore, do not relate to] the terms of the contract." *See id.* at 1102.

Additionally, Defendant argues "both the 2023 and 2025 Terms explicitly govern Babylist's policies surrounding its web-based data collection practices" because the Terms incorporate Defendant's Privacy Policy via a hyperlink. MTC at 15. But Defendant's superficial argument is not enough. Defendant fails to provide the relevant privacy policy(ies) for consideration, meaning, it is impossible to know whether those data collection practices encompass Defendant's actions here.

Accordingly, the Court should find Plaintiffs' claims are outside the scope of the Agreements.

## III. CONCLUSION

Based on the foregoing, Plaintiffs request that the Court deny Defendant's Motion to Compel Arbitration.

Dated:  March 9, 2026

**BURSOR & FISHER, P.A**.

By:  /s/ *Philip L. Fraietta*

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: idiaz@bursor.com

*Attorneys for Plaintiffs*