PURVI G. PATEL (CA SBN 270702)
PPatel@mofo.com
ERIK MANUKYAN (CA SBN 340307)
EManukyan@mofo.com
ANDREW Q. NGUYEN (CA SBN 357744)
AndrewNguyen@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone:    213.892.5200
Facsimile:    213.892.5454

Attorneys for Defendant
BABY LIST, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIANCA SLAVIERO and AISLEY DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BABY LIST, INC.,<br><br>Defendant. | Case No. 3:25-cv-09496-RS<br><br>**DEFENDANT BABY LIST, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Judge: Hon. Richard Seeborg<br><br>Date: April 16, 2026<br>Time: 1:30 PM<br>Courtroom: 3<br><br>Date Action Filed: November 4, 2025<br>Trial Date: Not set |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................. 1

II.   ARGUMENT ...................................................................................................................... 1

    A.    Plaintiffs Were on Conspicuous Notice of the Terms.......................................... 1

    B.    Purported Lack of Sophistication Has No Bearing on Delegation ......................... 5

    C.    Plaintiffs Fail to Show That the 2025 Agreement's Delegation Clause Is Unconscionable ..................................................................................................... 6

        1.    The 2025 Agreement's delegation clause is not procedurally unconscionable because it does not create oppression or surprise.............. 6

        2.    The 2025 Agreement's delegation clause is not substantively unconscionable because there is no risk of unfair delay, time-barred claims, or any chilling effect ................................................................................ 8

    D.    Plaintiffs' Broader Arguments That the 2023 and 2025 Agreements Are Procedurally and Substantively Unconscionable Fail............................................ 10

    E.    Severance Remains Appropriate if the Court Finds Some Unconscionability ...... 13

    F.    The 2023 Arbitration Agreement Applies Retroactively ....................................... 13

    G.    Plaintiffs' Claims Arising from Use of Babylist's Website Fall Squarely Within the Scope of the Arbitration Agreements Governing that Use .............................. 15

III.  CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkins v. Amplitude, Inc.*,
2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) ................................................................... 12, 13

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......................................................................................... 1, 2, 3

*Bielski v. Coinbase*,
87 F.4th 1003 (9th Cir. 2023) ................................................................................................. 9

*Broomes v. FullBeauty Brands Operations, LLC*,
2025 WL 3548680 (ND Cal. Dec. 11, 2025) .......................................................................... 5

*Carolus v. Coinbase Glob., Inc.*,
2025 WL 3033736 (N.D. Cal. Oct. 7, 2025) ........................................................................ 13

*Castro v. ABM Ind., Inc.*,
2018 WL 2197527 (N.D. Cal. May 14, 2018) ...................................................................... 14

*Cavanaugh v. Fanatics, LLC*,
738 F. Supp. 3d 1285 (E.D. Cal. 2024) ......................................................................... 1, 2, 3

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ......................................................................................... 1, 2

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015) ............................................................................................... 14

*Collett v. Ancestry.com DNA LLC*,
2019 WL 13253477 (N.D. Cal. Dec. 19, 2019) (Seeborg, J.) ................................................ 5

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) (Seeborg, J.) .............................................................. 5

*Cruz v. Tapestry, Inc.*,
113 Cal. App. 5th 943 (2025) ................................................................................................. 4

*Davis v. Experian Info. Sols., Inc.*,
No. 25-cv-04819-HSG (N.D. Cal. June 23, 2025), ECF No. 9-2 ......................................... 12

*Erickson v. Neb. Mach. Co.*,
2015 WL 4089849 (N.D. Cal. July 6, 2015) ........................................................................ 15

*Flores v. Transamerica HomeFirst, Inc.*,
93 Cal. App. 4th 846 (2001) ................................................................................................... 7

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025).................................................................................. 1, 2, 3, 4

*Hale v. Brinker Int'l, Inc.*,
2022 WL 2187397 (N.D. Cal. June 17, 2022) ....................................................... 13

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024)............................................................................... 7, 13

*Iravanian v. Translations.com, Inc.*,
687 F. Supp. 3d 871 (N.D. Cal. 2023) ................................................................. 7, 13

*Jackson v. Amazon*
65 F.4th 1093, 1095 (9th Cir. 2023) ..................................................................... 15

*Jones v. Starz Ent., LLC*,
129 F.4th 1176 (9th Cir. 2025)............................................................................. 13, 14

*Kaplan v. Athletic Media Co.*,
705 F. Supp. 3d 992 (N.D. Cal. 2023) ................................................................. 8

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024).............................................................................. 1

*Kroskey v. Elevate Labs, LLC*,
2025 WL 1507091 (N.D. Cal. May 27, 2025) ...................................................... 1, 2

*L.W.A. v. LinkedIn Corp.*,
2025 WL 2780788 (N.D. Cal. Sept. 30, 2025) ..................................................... 3

*Lag Shot LLC v. Facebook, Inc.*,
545 F. Supp. 3d 770 (N.D. Cal. 2021) .................................................................. 8

*Lee v. Plex, Inc.*,
773 F. Supp. 3d 755 (N.D. Cal. 2025) .................................................................. 5

*Lee v. Ticketmaster, L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) ......................................................................... 4

*Lim v. TForce Logistics, LLC*,
8 F.4th 992 (9th Cir. 2021)................................................................................... 7, 11, 13

*Long v. Fidelity Water Sys., Inc.*,
2000 WL 989914 (N.D. Cal. May 26, 2000) ........................................................ 14

*MacClelland v. Cellco P'ship*
609 F. Supp. 3d 1024 (N.D. Cal. 2022) ............................................................... 10

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*MacDonald v. Rocket Mortg. LLC,*
2024 WL 5200480 (D. Ariz. Dec. 23, 2024) ............................................................... 4

*Massel v. Successfulmatch.com,*
2025 WL 2452371 (9th Cir. Aug. 26, 2025).............................................................. 3

*Meadows v. Dickey's Barbecue Rests. Inc.,*
144 F. Supp. 3d. 1069 (N.D. Cal. 2015) ..................................................................... 6

*Morse v. ServiceMaster Glob. Holdings Inc.,*
2012 WL 4755035 (N.D. Cal. Oct. 4, 2012)............................................................. 14

*Nyulassy v. Lockheed Martin Corp.,*
120 Cal. App. 4th 1267 (2004)..................................................................................... 9

*Oberstein v. Live Nation Ent., Inc.,*
60 F.4th 505 (9th Cir. 2023).................................................................................... 2, 3

*Pandolfi v. AviaGames, Inc.,*
2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ..................................................... *passim*

*Patrick v. Running Warehouse, LLC,*
93 F.4th 468 (9th Cir. 2024)..................................................................................... 5, 6

*Pokorny v. Quixtar, Inc.,*
601 F.3d 987 (9th Cir. 2010)....................................................................................... 9

*Ramirez De Portillo v. Metro Servs. Grp.,*
2025 WL 1644279 (N.D. Cal. June 10, 2025) .......................................................... 14

*Regan v. Pinger, Inc.,*
2021 WL 706465 (N.D. Cal. Feb. 23, 2021)............................................................... 4

*Rios v. HRB Digital LLC,*
807 F. Supp. 3d 975 (N.D. Cal. 2025) ........................................................................ 8

*Rivas v. CVS Pharmacy, Inc.,*
2025 WL 2076634 (N.D. Cal. July 23, 2025)............................................................. 8

*Rushing v. Williams-Sonoma, Inc.,*
2025 WL 2391394 (N.D. Cal. Aug. 18, 2025)............................................................ 5

*Sanchez v. Valencia Holding Co. LLC,*
61 Cal. 4th 899 (2015) .............................................................................................. 11

*Schlueter-Beckner v. SimpliSafe, Inc.,*
2025 WL 2162948 (N.D. Cal. July 30, 2025)............................................................. 6

## TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Shugars v. Walmart Inc.*,
    2025 WL 786348 (N.D. Cal. Mar. 12, 2025)................................................................ 8

*Silver v. Stripe Inc.*
    2021 WL 3191752 (N.D. Cal. July 28, 2021)............................................................... 4

*Singh v. Adobe Inc.*,
    797 F. Supp. 3d 1038 (N.D. Cal. 2025) ...................................................................... 3

*Singh v. Payward, Inc.*,
    2023 WL 5420943 (N.D. Cal. Aug. 22, 2023).............................................................. 6

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 ............................................................................................................ 11

*Turbin v. Thumbtack, Inc.*,
    2025 WL 3013972 (N.D. Cal. Oct. 28, 2025).............................................................. 8,

*Ulbrich v. Overstock.Com, Inc.*,
    887 F. Supp. 2d 924 (N.D. Cal. 2012) ....................................................................... 15

*In re Verisign, Inc. Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ..................................................................... 14

**Other Authorities**

Cal. Civ. Proc. Code § 1284.3.................................................................................... 11

## I.   INTRODUCTION

Plaintiffs rely on scattershot notices that they claim are "nearly identical" to Babylist's 2024 and 2025 signup pages to argue that they were not "on notice" of Babylist's Terms of Use. Closer scrutiny, however, reveals dispositive fact differences.  Plaintiffs' screenshots from *Chabolla, Berman*, *Cavanaugh*, and *Godun* are emblematic of the problem.  Plaintiffs emphasize two notices from *Chabolla* (purportedly better than Babylist's), but ignore that the Ninth Circuit declined to consider whether these notices were inconspicuous at all.  Next, they point to *Berman*, but do not explain how the tiny gray notice—hidden and cluttered by web graphics—resembles Babylist's unfussy and prominent notice.  With *Cavanaugh*, they disregard that Babylist's hyperlinks were in contrasting font (bright blue for 2024 and bolded underline for 2025) as opposed to gray unobtrusive text.  Last, for *Godun*, they do not account for the large intervening text drawing attention away from the gray notice.  This pattern extends to ***all*** of Plaintiffs' cases, which are distinguishable from Babylist's signup pages on one or more conspicuousness factors.

The remainder of Plaintiffs' arguments fare no better.  Plaintiffs attempt to challenge elements of the 2023 Arbitration Agreement (binding Ms. Davis) and the 2025 Arbitration Agreement (binding Ms. Slaviero) as unconscionable and inapplicable to their claims.  But their arguments misread the Agreements, distort certain provisions, and ignore others.  Read correctly, the Agreements are fair and plainly written to govern Plaintiffs' dispute.  The Court should hold Plaintiffs to their agreements to arbitrate and dismiss the case with prejudice.

## II.   ARGUMENT

### A.   Plaintiffs Were on Conspicuous Notice of the Terms

From the start, Plaintiffs' analysis focuses solely on the visual placement of Babylist's Terms of Use, but ignores the context of the transaction.  (*See* ECF No. 27 ("Opp.") at 2-12); *see Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1019-20 (9th Cir. 2024) (analyzing (1) the context of the transaction; and (2) the visual placement of the notice).  "[T]he context of [Plaintiffs'] transaction" here makes clear Plaintiffs formed "a continuing, forward-looking relationship likely governed by terms and conditions." *Kroskey v. Elevate Labs, LLC*, 2025 WL 1507091, at *3 (N.D. Cal. May 27, 2025).  Plaintiffs cannot (and do not) dispute that they created

Babylist accounts on an e-commerce website, which customarily puts "users on notice for a link to the terms of that continuing relationship." *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023). Moreover, the very act of creating baby registries necessarily contemplates a "continuing, forward-looking relationship" with Babylist. *Kroskey*, 2025 WL 1507091, at *3 (citation omitted).

Plaintiffs are also wrong about the second factor: visual placement of the notice. All four of the notices from *Chabolla*, *Berman*, *Cavanaugh*, and *Godun* on which Plaintiffs primarily rely to argue Babylist's 2024 and 2025 signup pages were inconspicuous are distinguishable.

**Chabolla.** Plaintiffs misrepresent *Chabolla*, incorrectly stating the Ninth Circuit found the two Facebook screens included in the opposition insufficiently conspicuous. (Opp. at 4-5.) Rather, it "decline[d] to consider" whether the notices on those screens were "conspicuous enough." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1157-58 (9th Cir. 2025). Moreover, the one screen that *Chabolla* actually found inconspicuous, which Plaintiffs omit, is incomparable:



*Chabolla*, No. 23-15999 (9th Cir. Nov. 20, 2023), ECF No. 11 at 20. The court found that "[a] reasonably prudent user" clicking "Continue" (instead of the Facebook sign-up button) would likely "read no further if she had no intention of using Facebook." *Chabolla*, 129 F.4th at 1157. The notice also "fade[d] into the irrelevancy of other aspects of the page," including "varying font sizes and images of people exercising." *Id.* Here, there is no other action button or image

interrupting "Sign Up" and the notice that follows beneath. (ECF No. 22 ("Mot.") at 6-7.)

*Berman*. In *Berman* (Opp. at 4), the notices were gray, small, and crowded out by graphics, such that they were barely "legible to the naked eye." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022). Babylist's 2024 and 2025 signup pages, on the other hand, are uncluttered by any graphics, and respectively feature bright blue and bolded underline text in a size comparable to other text.

*Cavanaugh*. Unlike *Cavanaugh*'s faint gray text—which only underlined "Terms of Use"—Babylist does more to "offset" its Terms of Use. *Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1292 (E.D. Cal. 2024). The 2024 signup page used bright blue, hyperlinked font to emphasize and contrast "terms of use" from the surrounding black text. (Mot. at 7); *see also Oberstein*, 60 F.4th at 516 ("hyperlink" in "bright blue font, distinguishing it from the surrounding text" provides reasonably conspicuous notice); *see also Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038, 1048 (N.D. Cal. 2025) (same). And the 2025 signup page used ***both*** underlining ***and*** bolding, clearly emphasizing the "Terms of Use" from the surroundings. (Mot. at 6); *see Massel v. Successfulmatch.com*, 2025 WL 2452371, at *1 (9th Cir. Aug. 26, 2025) (use of underlined terms, bold font, and uncluttered visuals sufficiently conspicuous);[1] *L.W.A. v. LinkedIn Corp.*, 2025 WL 2780788, at *3 (N.D. Cal. Sept. 30, 2025) (underlined text "sufficient when viewed in the context of the overall design and content of the webpage" (citation omitted)). Because the 2025 signup page uses bolding, underlining, and uncluttered visuals, Plaintiffs' argument about underlining alone is irrelevant. (Opp. at 7-8.)

*Godun*. Like in *Cavanaugh*, the notice in *Godun* is in gray, and the only emphasis for the "Terms of Service" is through underlining—there is no use of color or bolding. *Godun v. JustAnswer LLC*, 135 F.4th 699, 705 (9th Cir. 2025). Plaintiffs also argue Babylist's notice was inconspicuous because it was "not [] located directly above or below the action button." *Id.* 712; (Opp. at 10). Even setting aside the other differentiators (gray text, no bolding or color), *Godun*'s design is distinct. There, the notice was in "relatively small text" when compared to the

---

[1] Plaintiff cites the district court's decision in *Massel* (Opp. at 8), but omits that the Ninth Circuit reversed, finding the notice conspicuous.

intervening ad to "Try 7 days for $5. . . ," which itself spanned 2 lines of text and was overemphasized relative to the notice. *Godun*, 135 F.4th at 704, 711. By comparison, Babylist's 2024 and 2025 signup pages have just one line of intervening text—"Your registry is private until you choose to share it"—and the notices are the same size as that text. (Mot. at 6-7.) Combined with their contrasting text (bright blue font; bold underline), Babylist's Terms of Use are the clear focal point under the "Sign Up" button. (*Id.*).

Plaintiffs are also wrong that a notice must be directly above or below the "Sign Up" button. (Opp. at 9-10.) The notice just needs to be in "close proximity to the relevant action button." *See Regan v. Pinger, Inc.*, 2021 WL 706465, at *7 (N.D. Cal. Feb. 23, 2021); *MacDonald v. Rocket Mortg. LLC*, 2024 WL 5200480, at *4 (D. Ariz. Dec. 23, 2024) ("[T]ext below the button, even . . . separated by a few lines, may support reasonably conspicuous notice.") (citing *Lee v. Ticketmaster, L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020)). In *Silver v. Stripe Inc.*, the court found the depicted notice sufficiently "close to the 'place order' button":



2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021). Babylist's notices are even closer to the "Sign Up" button, with only one line of text in between, similar-sized font, and no clutter. (Mot. at 6-7.) Plaintiffs' cases are in stark contrast, where elements cluttered the page and separated the notices from the action buttons by multiple lines. *Godun*, 135 F.4th at 705 (text separating action button from notice was larger in font and spanned multiple sentences and lines); *Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, 959 (2025) (emphasizing "degree of clutter on the two-column

checkout pages" and conspicuousness of the "pages' other elements" relative to "the notice text");

*Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 766, 776 (N.D. Cal. 2025) (action button separated from

notice by irrelevant large buttons, field entries, and inapplicable instructions).

Plaintiffs' remaining cases do not support a contrary outcome.  (Opp. at 5, 7-8.)

| Notice | Set apart text?[2] | Contrasting background? | Legible font size? | Clutter-free webpage? |
|---|---|---|---|---|
| **Babylist 2024 Signup Page** | **Yes** | **Yes** | **Yes** | **Yes** |
| **Babylist 2025 Signup Page** | **Yes** | **Yes** | **Yes** | **Yes** |
| *Rushing v. Williams-Sonoma, Inc.*[3] | Yes | Not discussed | Not discussed | No |
| *Lopez v. Dave, Inc.* | No | Not discussed | No | Not discussed |
| *Serrano v. Open Rd. Delivery Holdings, Inc.* | No | No | Not discussed | Yes |
| *Quamina v. JustAnswer LLC* | No | Not discussed | Not discussed | No |
| *Rocha v. Urb. Outfitters, Inc.* | No | No | Not discussed | No |
| *Ramirez v. Trusper, Inc.* (error in hyperlink) | No | Not discussed | Not discussed | Not discussed |
| *Plata v. Lands' End, Inc.* (hyperlink did not work) | No | Not discussed | Not discussed | No |
| *Williams v. DDR Media, LLC* (hyperlink "buried" in paragraph) | No | No | Not discussed | No |
| *Gill v. Chipotle Mexican Grill, Inc.* | No | Yes | Not discussed | Not discussed |

### B.    Purported Lack of Sophistication Has No Bearing on Delegation

This Court has repeatedly held that incorporation of arbitration rules in consumer

contracts constitutes "clear and unmistakable" delegation of arbitrability, regardless of the

sophistication of the parties.  *See, e.g.*, *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 991-92

(N.D. Cal. 2017) (Seeborg, J.); *Collett v. Ancestry.com DNA LLC*, 2019 WL 13253477, at *2-3

(N.D. Cal. Dec. 19, 2019) (Seeborg, J.).  Post-*Brennan*, "[t]he majority of district courts" have

found delegation "in the consumer contract context, especially where plaintiffs have not

introduced any evidence of their lack of sophistication."  *Broomes v. FullBeauty Brands*

*Operations, LLC*, 2025 WL 3548680, at *4 (N.D. Cal. Dec. 11, 2025); *Patrick v. Running*

---

[2] "Set apart" text refers to bolding, use of a different font color, or capitalization.
[3] *Rushing* found that the notice was inconspicuous, notwithstanding blue font, because the "organization of the page" focused on the terms for a separate program rather than the program at issue.  *Rushing v. Williams-Sonoma, Inc.*, 2025 WL 2391394, at *9 (N.D. Cal. Aug. 18, 2025); (Opp. at 7).

*Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) (finding delegation through incorporation of JAMS rules in consumer contract).

Even assuming Plaintiffs' sophistication were material, Plaintiffs have not offered any evidence supporting their inability to read a contract. *C.f. Patrick*, 93 F.4th at 481 (declining to consider sophistication where plaintiffs offered no evidence).[4] They state in conclusory fashion that they are "consumers who have no legal training" or "experience" reading contracts, but that merely parrots *Simplisafe*. (Opp. at 14 (citing *Schlueter-Beckner v. SimpliSafe, Inc.*, 2025 WL 2162948, at *8 (N.D. Cal. July 30, 2025) ("unreasonable for the average consumers with no legal experience")).) *Simplisafe* and Plaintiffs' other cases (Opp. at 13-14), however, involved long, byzantine terms (compared to Babylist's, which are 8 and 13 pages long) and are therefore inapposite. *Simplisafe*, 2025 WL 2162948, at *8 (no delegation in "this context" because rules were buried within a 20-page terms of service, which plaintiff had to navigate on his phone); *Eiess v. USAA Fed. Sav. Bank*, No. 19-cv-0108 (N.D. Cal. Apr. 12, 2019), ECF No. 31-1, Ex. A (59-page terms)*; Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1079 (N.D. Cal. 2015) (60-page terms)*; Magill v. Wells Fargo Bank, N.A.*, No. 21-cv-1877 (N.D. Cal. Mar. 24, 2021), ECF No. 12-2, Ex. 3 (65-page terms). Moreover, weighing Plaintiffs' sophistication without evidence would "require[] impractical line-drawing." *Singh v. Payward, Inc.*, 2023 WL 5420943, at *8 (N.D. Cal. Aug. 22, 2023) (collecting cases).

### C. Plaintiffs Fail to Show That the 2025 Agreement's Delegation Clause Is Unconscionable

#### 1. The 2025 Agreement's delegation clause is not procedurally unconscionable because it does not create oppression or surprise

Plaintiffs argue (i) the 2025 Agreement is a contract of adhesion, (ii) its delegation clause is inconspicuously "buried," and (iii) the Agreement's opt-out clause does not defeat procedural unconscionability. (Opp. at 15-17.) Not one of these arguments satisfies their burden.

**No contract of adhesion.** The adhesiveness of a contract is mitigated when consumers

---

[4] Plaintiffs contend *Patrick* is different because the agreement there hyperlinked the JAMS rules. (Opp. at 14.) While the 2025 Agreement provides a hyperlink and the 2023 Agreement does not (ECF No. 22-1, ("Levada Decl."), Ex. A at 17; *id*. Ex. B at 26), nothing in *Patrick* requires a link to enforce delegation. *See generally* 93 F.4th 468.

can obtain the same services from another business.  (Mot. at 17.)  Babylist identified numerous other online baby registry providers available to Plaintiffs.  (*Id.* n.4.)  Not only do Plaintiffs ignore that argument, but their cases (Opp. at 15-16) are inapposite because they deal with sole and exclusive service providers.  *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 682 (9th Cir. 2024) (Ticketmaster was "the exclusive ticket seller" and buyers were forced to accept terms or be "foreclosed from purchasing tickets"); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001) ("HomeFirst's representative told plaintiffs" it "was the only company in California offering reverse mortgages").  Because Plaintiffs could have gone with one of many other baby registry providers, the Agreement is not a contract of adhesion.

**No element of surprise.**  Next, Plaintiffs rely on three cases to argue that the delegation clause is "buried" in the 2025 Agreement.  (Opp. at 16.)  But Plaintiffs' cases are off base; the agreements at issue (i) had small, hard-to-read font, (ii) lacked signposting, and (iii) failed to draw attention to the dispute resolution section.[5]  Here, by comparison, the top of the 2025 Terms includes all-caps text instructing consumers to read the dispute resolution provisions below.  (Levada Decl., Ex. B. at 18; *see also* Mot. at 17.)  The delegation clause is also exactly where one would expect it: in a short paragraph titled "Applicability of Arbitration Agreement," which itself is the first heading under the bolded title "Dispute Resolution."  (Levada Decl., Ex. B at 26.)  Furthermore, the 2025 Agreement is presented in legible, consistently-sized font, with black text (not pale-gray) on a white background.  (*Id.*)  Thus, the delegation clause poses no surprise.

**The Agreement's opt-out clause mitigates any procedural unconscionability.**  Plaintiffs' only remaining argument—that Babylist relies on an "erroneous interpretation of *Mohamed*"—is a strawman.  (Opp. at 16.)  Neither Babylist's motion nor the cases it cites assume that an opt-out clause, by itself, is sufficient to extinguish procedural unconscionability.  (Mot. at

---

[5] *See Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *4 (N.D. Cal. Sept. 4, 2024) (delegation clause "in the middle of 16 numbered paragraphs"; "within 14 pages of single-spaced, 8-point font in barely readable, light gray text"; and the clause "[was] not even numbered, let alone titled"); *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021) (delegation clause was "in the middle of 31 numbered paragraphs, within more than nine pages of single-spaced, 10-point font" and nothing "called Lim's attention to the delegation clause"); *Iravanian v. Translations.com, Inc.*, 687 F. Supp. 3d 871, 878 (N.D. Cal. 2023) (arbitration agreement "located at the end of more than 40 individual paragraphs with no visual markers to call Plaintiff's attention to it").

15-18.)  As Plaintiffs tacitly concede, Babylist's cases considered "the totality of the circumstances," but found no procedural unconscionability anyway.  (Opp. at 16 (quoting *Turbin v. Thumbtack, Inc.*, 2025 WL 3013972, at *5 (N.D. Cal. Oct. 28, 2025)).)[6]  Here too, the totality of the circumstances makes clear that there is no procedural unconscionability.  (*See* Section II.C.1.)  Even if the Court finds *some* adhesiveness or surprise, Plaintiffs' own case supports that an "opt-out" like Babylist's "can mitigate" a finding of procedural unconscionability.  (Opp. at 16); *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 989 (N.D. Cal. 2025).  Thus, taking everything together (availability of other registry providers, all-caps text calling attention to the dispute resolution section, and the opt-out), Plaintiffs cannot show procedural unconscionability.

> **2.    The 2025 Agreement's delegation clause is not substantively unconscionable because there is no risk of unfair delay, time-barred claims, or any chilling effect**

The Court need not reach this inquiry because the delegation clause is not procedurally unconscionable.  *See Turbin*, 2025 WL 3013972, at *5 (ending analysis after finding no procedural unconscionability).  But if it did, it would find that Plaintiffs have again failed to meet their burden.  Plaintiffs argue that the 2025 Agreement's delegation clause is substantively unconscionable when combined with (i) the pre-arbitration dispute resolution provision; and (ii) the mass arbitration clause.  (Opp. at 17-18.)  Neither argument is enough.

**The pre-arbitration dispute resolution provision is not unconscionable**.  Plaintiffs challenge three aspects of the dispute resolution provision, but none risk unfairness.  ***First***, Plaintiffs claim that a consumer cannot reach an arbitrator to decide the enforceability of the provision until after the dispute resolution process has already occurred.  (*Id*. at 17.)  Plaintiffs'

---

[6] *See also Lag Shot LLC v. Facebook, Inc.*, 545 F. Supp. 3d 770, 779-80 (N.D. Cal. 2021) (no procedural unconscionability even after recognizing an opt-out alone "may not be determinative"); *Shugars v. Walmart Inc.*, 2025 WL 786348, at *7 (N.D. Cal. Mar. 12, 2025) (no procedural unconscionability despite Walmart's purported "superior bargaining power"); *Rivas v. CVS Pharmacy, Inc.*, 2025 WL 2076634, at *4 (N.D. Cal. July 23, 2025) (no procedural unconscionability despite argument plaintiff "was impermissibly 'rushed' through the onboarding process").  Plaintiffs argue *Rivas* is distinct because plaintiff acknowledged the existence of an opt-out by signing a "Statement of Assent and Understanding" (Opp. at 17), but courts routinely rely on opt-out clauses as bases to enforce arbitration agreements even without a signed acknowledgment.  *See, e.g., Turbin*, 2025 WL 3013972, at *5 (no requirement to sign or initial); *Lag Shot*, 545 F. Supp. 3d at 780 (same); *Kaplan v. Athletic Media Co.*, 705 F. Supp. 3d 992, 1006 (N.D. Cal. 2023) (same).

argument is hypothetical; there is **no** prejudice to Plaintiffs who have already violated their Agreements and filed suit. (*Id.*) Even absent that fact, the Ninth Circuit has considered and rejected this argument. *See Bielski v. Coinbase*, 87 F.4th 1003, 1015 (9th Cir. 2023). *Bielski* enforced Coinbase's arbitration agreement and found only a "low level" of substantive unconscionability. *Id. Bielski* reached that conclusion **even though** the dispute resolution provision was "one-sided," unlike the bilateral provision here. *Compare id. with* (Levada Decl., Ex. B at 26.) **Second**, Plaintiffs argue the provision is unconscionable because it curtails the effective limitations period by 60 days.[7] This is also a hypothetical argument. Plaintiffs allege that they brought their claims about 11 months before the limitations period would have run. (ECF No. 1 ("Compl.") ¶¶ 6-8 (alleging their claims arose in October 2025 and filing on November 4, 2025).) **Third**, Plaintiffs assert, without explanation, that the provision would give Babylist a "free peek" at their case. (Opp. at 18.) But not only is the dispute resolution process symmetrical, Plaintiffs are also under no obligation to do more than provide contact information and describe the dispute. (Levada Decl., Ex. B at 26.) **Finally**, Babylist's provision is in stark contrast to the employer-controlled mediation processes at issue in Plaintiffs' cases. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 998 (9th Cir. 2010) (employee had "to submit to an employer-controlled dispute resolution mechanism" without "a neutral mediator" (citation omitted)); *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1283 (2004) (same).

**The mass arbitration clause is not unconscionable.** The clause neither creates unconscionable "delay," nor risks claims being time-barred. (Opp. at 18-19.) As anticipated, Plaintiffs rely on *Pandolfi* for their "unconscionabl[e] delay[]" argument (*id.*), but *Pandolfi*'s fact-specific conclusion does not apply to the 2025 Agreement. (Mot. at 20); *see also Pandolfi,* 2024 WL 4051754, at *6 n.4 (stating its analysis "should not be viewed as a general condemnation of case management strategies for mass arbitrations"). Specifically, Plaintiffs claim that "the [2025 Agreement's] bellwether provision only allows for 10 cases to proceed at any given time." (Opp. at 18.) But that misstates the plain text of the Agreement. In fact, the Agreement requires that

---

[7] Plaintiffs say the limitations period is reduced from one year to "eight months." (Opp. at 17). But 12 months minus 60 days is 10 months.

after the first batch of 10 claims are heard—in parallel and before different arbitrators—the parties must then attempt a global mediation at Babylist's expense. (Levada Decl., Ex. B at 27.) If that is unsuccessful, all remaining claimants can bring their cases *at the same time*. (*Id.*) That is in direct contrast to the bellwether provision in *Pandolfi*, where claimants were forced to wait while only 20 claims could proceed at any given time, continuing in perpetuity. *Pandolfi*, 2024 WL 4051754, at *3 (finding unconscionability given potential delay "as long as 150 years"). Not only is the 2025 Agreement optimized for significantly quicker resolution of all disputes, but there is also nothing about combining the delegation clause with the mass arbitration procedure that introduces "delay." Because arbitrability and the validity of the delegation clause are among the first issues arbitrators will have to decide as a matter of jurisdiction, claimants will have an early offramp opportunity to court. And as Babylist has explained, the 2025 Agreement allows claimants to sidestep arbitration altogether and bring actions in small claims court. (Mot. at 23 (citing Levada Decl., Ex. B at 26).) Thus, any "delay" is minimal with no "chilling effect."

Next, Plaintiffs mistakenly argue that the 2025 Agreement risks time-barring non-bellwether claimants. (Opp. at 19.) But claimants must submit a demand for arbitration before any mass arbitration process is even triggered, and the Agreement does not prohibit individuals from doing so after that process has commenced. (Levada Decl., Ex. B at 27 ("If 75 or more individuals *submit* similar arbitration claims . . . .") (emphasis added).) A timely submitted claim cannot be time-barred. It is irrelevant if the dispute is temporarily stayed during the initial batch of 10 claims. Plaintiffs' sole case proves this distinction. (Opp. at 19.) In *MacClelland v. Cellco P'ship*, the risk of claims being time-barred arose from the following bar: "consumers may not 'file' their claims in arbitration until all preceding traunches are adjudicated." 609 F. Supp. 3d 1024, 1042 (N.D. Cal. 2022). There is no such bar here. (*See* Levada Decl., Ex. B.)

### D.    Plaintiffs' Broader Arguments That the 2023 and 2025 Agreements Are Procedurally and Substantively Unconscionable Fail

Because the delegation clause is valid and enforceable (*see* Section II.C), the Court need not continue further. If it were to do so, it would find the Agreements enforceable. Plaintiffs repeat their arguments here regarding the 2025 Agreement's delegation clause, claiming that the

broader 2023 and 2025 Agreements are procedurally and substantively unconscionable for the same reasons. (Opp. at 19.) These arguments fail for the reasons explained in Section II.C, and their remaining arguments (*Id*. at 19-20) fail as well for several reasons.

**2023 Agreement.** Plaintiffs challenge two specific elements of the 2023 Agreement: (i) the "Miscellaneous" heading as procedurally unconscionable and (ii) the fee-shifting provision as substantively unconscionable. (*Id*.) Neither succeed.

Plaintiffs omit facts and offer no authority for their argument that the 2023 Agreement is procedurally unconscionable because the arbitration provision is under the "Miscellaneous" section. (*Id*. at 19.) Though "Miscellaneous" is the section heading, Plaintiffs omit that the arbitration provision has its own, discrete underlined heading titled "Dispute Resolution." (Levada Decl., Ex. A at 17.) Coupled with the all-caps disclosure at the beginning of the Agreement to "PLEASE READ THE DISPUTE SECTION BELOW," the arbitration agreement is difficult to overlook. (Opp. at 19.) The 2023 Agreement also includes an opt-out provision (Levada Decl, Ex. A at 17), which, under Plaintiffs' own authority, "mitigate[s]" any "oppressive effect" arising from the "Miscellaneous" heading. (*See* Section II.C.1 (citing *Rios*).)

Nor is there any substantive unconscionability arising from the "fee-shifting" provision. (Opp. at 20.) Plaintiffs' one case is distinguishable because it is an employment matter subject to a different standard for evaluating fees. *Lim v. TForce Logistics*, 8 F.4th 992, 1002 (9th Cir. 2021). But for consumer arbitrations, *Lim* and other Ninth Circuit precedent make clear that fee-shifting provisions are not unconscionable, where (as here) "plaintiffs [] do not claim, and no evidence in the record suggests, that the arbitration fees are unaffordable for them or would thwart their ability to arbitrate this dispute." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1026-27 (citing *Sanchez v. Valencia Holding Co. LLC*, 61 Cal. 4th 899 (2015) and Cal. Civ. Proc. Code § 1284.3); *Lim*, 8 F.4th at 1002 (citing *Tompkins* as "distinguishing loser-pay scenario in employment context from consumer context under California law").

**2025 Agreement.** Plaintiffs contend (incorrectly) that the distinctions between the mass arbitration provisions here and in *Pandolfi* are "meaningless." (Opp. at 20; Mot. at 20.) In Plaintiffs' view, the mere "prospect of delay"—arising, purportedly, when a claimant does not

know "whether their claims will be chosen for the first batch of 10 cases"—has the same chilling effect from *Pandolfi*. (Opp. at 20.) Their reasoning fails as explained in Section II.C.2 (any delay is minimal and claimants have alternative and immediate paths to court). Plaintiffs' argument also struggles logically at a more fundamental level. Under their "prospect of delay" standard, established civil procedure (*e.g.*, multidistrict litigation) would be problematic because plaintiffs cannot know in advance if their claims will be consolidated and subject to a bellwether process. (*See, e.g.*, J.P.M.L.R. P. 7.1 (conditionally transferring tag-along actions that share the same common questions of fact).) That cannot be and certainly is not what *Pandolfi* intends. 2024 WL 4051754 at *3, *6 n.4 (no "general condemnation" of mass arbitration procedures).

Plaintiffs also claim the 2025 Agreement's process administrator provision poses "due process" concerns, but do not explain further. (Opp. at 20.) Once again, it appears Plaintiffs are invoking *Pandolfi*, where defendants argued the process arbitrator could decide arbitrability, including on behalf of claimants who had not yet filed a claim. While *Pandolfi* explained that this arrangement *could* cause due process concerns, it disagreed with the premise that a process arbitrator could decide arbitrability at all. 2024 WL 4051754, at *8 ("[A]rbitrability is a core merits determination" and not a "ministerial decision" for the process arbitrator to decide). Babylist does not contend that the process administrator can decide arbitrability, thus Plaintiffs' argument is irrelevant. (Opp. at 20.) Rather, Babylist's point is that by explicitly requiring a process administrator for efficient batching and consolidation, the 2025 Agreement is optimized for speed rather than delay, unlike *Pandolfi*. (Mot. at 21.)

Plaintiffs' attempts to distinguish Babylist's post-*Pandolfi* cases do not help. (Opp. at 21.) While Plaintiffs correctly point out that *Experian* and *Atkins* did not feature precedential bellwether provisions (*id.*),[8] neither does the 2025 Agreement. *Davis v. Experian Info. Sols., Inc.*, No. 25-cv-04819-HSG (N.D. Cal. June 23, 2025), ECF No. 9-2 at 31 (consolidating claims into batches with no precedential effect of one arbitration on another), *Atkins v. Amplitude, Inc.*, 2025

---

[8] Babylist understands *Experian*'s and *Atkins*' batching provisions to create a type of *de facto* bellwether process, to the extent all batches cannot be heard at once. (Mot. at 22.) Plaintiffs appear to distinguish *batching* from *precedential bellwethers*, *i.e.*, where the first batch of claims has a precedential effect on the remainder.

WL 2521732, at *4-5 (N.D. Cal. Sept. 2, 2025) (same); Levada Decl., Ex. B at 27 (providing for batching with no precedential effect on remaining claims); *but see Heckman*, 120 F.4th at 683-87 (all bellwethers and remaining disputes resolved by "a single arbitrator," bellwether cases are precedential on remaining claimants, and claimants had no ability to opt out).  Plaintiffs also misread *Carolus* and claim it distinguished *Pandolfi* on the narrow basis that the parties did not challenge the AAA rules.  (Opp. at 21.)  But *Carolus* went quite a bit further.  It distinguished AAA's mass arbitration rules from *Pandolfi*'s because the terms in *Pandolfi* "required coordinated trials that bound absent parties to prior decisions."  *Carolus v. Coinbase Glob., Inc.*, 2025 WL 3033736, at *13 (N.D. Cal. Oct. 7, 2025).  The Ninth Circuit recently revisited *Heckman*, explaining the problem with precedential bellwethers:

> [T]hree bellwether cases were selected to serve as precedents for all cases in the same batch. Claimants in non-bellwether cases had no right to participate in the bellwether cases, no access to the bellwether decision until it was invoked against them, no notice of the bellwether cases, no opportunity to be heard, and no right to opt out of the batch. In short, [the] protocol contained all the red flags associated with classwide arbitration.

*Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1182 (9th Cir. 2025). By comparison, the Agreements do not bind claimants to prior rulings, nor do they pose any of the other "red flags."

**E.**     **Severance Remains Appropriate if the Court Finds Some Unconscionability**

Because there is no "chilling effect" from the 2023 and 2025 Agreements (*see* Sections II.C.2 and II.D), Plaintiffs' sole argument against severability fails.[9]  Plaintiffs neglect to address the other factors Babylist raised in favor of severability.  (Mot. at 23 (unconscionability does not "permeate" the Agreement because of its bilateral application, and carveouts for injunctive relief and small claims court actions).)  Nor could they—a claimant's ability to skip arbitration and proceed in small claims court eliminates any purported "chilling effect."  (*See* Section II.C.2; Mot. at 23.)  Because there is no pervasive unconscionability, severability remains appropriate.

**F.**     **The 2023 Arbitration Agreement Applies Retroactively**

As a fallback, Plaintiffs argue the 2023 Agreement cannot apply to Ms. Davis because it

---

[9] Plaintiffs' cases relying on a pervasive "chilling effect" are therefore inapposite. (Opp. at 22.) *Lim*, *Iravanian*, and *Hale* are also distinguishable because they involved fee-shifting and cost-sharing provisions in the employment context—not the consumer context as discussed Section II.D.  *See Lim*, 8 F.4th at 1002-05; *Iravanian*, 687 F. Supp. 3d at 880-81; *Hale v. Brinker Int'l, Inc.*, 2022 WL 2187397, at *1 (N.D. Cal. June 17, 2022).

does not "clearly and unequivocally" apply retroactively.[10] (Opp. at 22-23.) More recently, "[c]ourts have applied arbitration clauses without a temporal limitation to claims that precede the plaintiff's acceptance of the terms." *Ramirez De Portillo v. Metro Servs. Grp.*, 2025 WL 1644279, at *9 (N.D. Cal. June 10, 2025) (collecting cases). The 2023 Arbitration Agreement lacks an express temporal limitation and therefore falls into this category. It specifically states: "***Any dispute*** arising from or relating to the subject matter of these Terms shall be finally settled by arbitration[.]" (Levada Decl., Ex. A at 17 (emphasis added).) Courts routinely find that similar language applies retroactively. *See, e.g.*, *Ramirez De Portillo*, 2025 WL 1644279, at *9 (agreement to arbitrate "any and all violations"); *Jones*, 419 F. Supp. 2d at 1150 ("[a]ny dispute . . . arising out of this Contract"); *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1223-24 (N.D. Cal. 2007) ("[a]ny dispute or claim arising out of . . . the engagement letter").

Plaintiffs also take issue with the sentence "***In the event a dispute arises*** between You and Babylist, please contact Babylist," and incorrectly contend it creates prospectivity. (Levada Decl., Ex. A at 17; Opp. at 23 (emphasis added).) This is a stretch. The text means no more and no less than ***if*** a dispute arises; it says nothing about ***when***. Moreover, the sentence is concerned only with providing notice to Babylist about a claim; it is not defining which claims can qualify for arbitration. Plaintiffs' cases are inapposite. (Opp. at 24.) In *Castro*, unlike here, the phrase "whenever they arise" modified the clause describing the claims that qualify for arbitration. *Castro v. ABM Ind., Inc.*, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) (requiring "binding mediation and arbitration" to resolve "all Covered Claims, *whenever they arise*") (emphasis in original). And in *Morse*, the arbitration agreement was "unambiguously prospective" because it related to plaintiff's "participation in [a new] compensation Plan," effective only after plaintiff signed the agreement. *Morse v. ServiceMaster Glob. Holdings Inc.*, 2012 WL 4755035, at *4 (N.D. Cal. Oct. 4, 2012). Plaintiffs' remaining cases concern defendants' unilateral amendment to the arbitration agreements, requiring arbitration after the plaintiff already filed suit.[11] That is not the case here; Ms. Slaviero agreed to arbitrate *before* filing suing.

---

[10] Plaintiffs concede that the 2025 Arbitration Agreement applies retroactively. (Opp. at 22.)
[11] Opp. at 23 (citing *Long v. Fidelity Water Sys., Inc.*, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000); *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966-67 (2015)).

**G.    Plaintiffs' Claims Arising from Use of Babylist's Website Fall Squarely Within the Scope of the Arbitration Agreements Governing that Use**

Last, Plaintiffs incorrectly argue that their claims "exist independent of the 2023 and 2025 Terms" and are therefore out of scope of the Agreements.  (Opp. at 24.)  But the Agreements encompass "all" and "any" disputes arising from Babylist's website, which plainly include claims based on the alleged third-party pixels operating on the website.  (Mot. at 14-15.)  Plaintiffs cite only one case, *Jackson v. Amazon*, which has no import here.  The arbitration agreement there governed employment disputes, and plaintiff's claim based on Amazon's purported wiretapping of private Facebook communications was "wholly unrelated" to the employment relationship.  65 F.4th 1093, 1095, 1102 (9th Cir. 2023).  Here, by comparison, Plaintiffs' claims are based on their conduct on Babylist's website, and claims based on the website are explicitly the subject matter of the Arbitration Agreements.  (Mot. 14-15.)  Plaintiffs' only other response is that Babylist did not provide a copy of the Privacy Policy, despite explaining that the Terms incorporate the Privacy Policy and stated data practices.  (Opp. at 25.)  But relying on the text of the 2023 and 2025 Terms alone, users are agreeing to "Babylist's collection and use of [their] personal information," which encompass Babylist's web-based data practices.  (Mot. at 15.)[12] There can be no dispute that the claims are in-scope and "all doubts [must] be resolved in favor of arbitrability."  *See Ulbrich v. Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 931 (N.D. Cal. 2012).

**III.    CONCLUSION**

The Court should therefore compel arbitration and dismiss the case with prejudice.

Dated: March 30, 2026

MORRISON & FOERSTER LLP

By:  */s/ Purvi G. Patel*
Purvi G. Patel

***Attorneys for Defendant Baby List, Inc.***

---

[12] Though Babylist does not believe its privacy policies are necessary to this inquiry, the policies are publicly available and therefore appropriate for judicial notice. https://www.babylist.com/privacy (effective May 5, 2025) (disclosing information is shared with "third-party service providers"); https://web.archive.org/web/20240222160345/ https://www.babylist.com/privacy (last updated Oct. 16, 2023) (same); *see Erickson v. Neb. Mach. Co.*, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) (taking "judicial notice of the contents of web pages available through Wayback Machine").