UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BIANCA SLAVIERO, et al.,

Plaintiffs,

v.

BABY LIST, INC.,

Defendant.

Case No.  25-cv-09496-RS

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Two plaintiffs—Bianca Slaviero and Aisley Davis—sued Baby List for various privacy-related torts. Baby List moves to compel arbitration and dismiss the case. Because Plaintiffs assented to an enforceable arbitration clause that delegates the issue of arbitrability, the motion is granted.

**I. BACKGROUND**

Baby List is an online platform that helps parents-to-be create and manage gift registries. Davis and Slaviero registered for Baby List accounts in 2024 and 2025, respectively. To create their accounts, Plaintiffs first had to fill out a questionnaire that asked, among other things, when the baby is due and whether the user has other children. After completing the questionnaire, Plaintiffs were directed to the sign-up page. It asks for the user's name, email address, and password. Below those information fields is a purple button labelled "Sign Up." Below that, in slightly smaller grey font, is a line of text that reads "By clicking Sign Up you agree to the

Babylist Terms of Use and Privacy Policy." That webpage is shown below.



Davis chose to sign up using the "Continue with Google" button on the top of the page. Clicking that button directed her to another webpage, which asked for the same information save her email address and password. That webpage is displayed below.



On both pages, the terms "Babylist Terms of Use" and "Privacy Policy" were displayed in black ink and were underlined. Those terms contained hyperlinks to the terms of use and privacy policy, respectively. At the time Davis signed up, the 2023 terms of use were operative. At the time Slaviero signed up, the 2025 terms of use were operative. Both versions contain the same mandatory individual arbitration provision. Specifically, the terms of use provide:

> In the event a dispute arises between You and Babylist, please contact Babylist. Any dispute arising from or relating to the subject matter of these Terms shall be finally settled by arbitration in San Francisco, California, using the English language in accordance with the Arbitration Rules and Procedures of Judicial Arbitration and Mediation Services, Inc. ("JAMS") then in effect . . .

Levada Decl., Ex. A, at 17 (2023 terms); *see id.*, Ex. B, at 26 (substantially similar provision in the 2025 terms). Both terms of use permitted Plaintiffs to opt out of the arbitration requirement. The relevant provision provided:

> RIGHT TO OPT OUT OF ARBITRATION WAIVER. You may opt out of the foregoing Arbitration Agreement of these Terms by **notifying Babylist in writing within 30 days of the date You first registered for the Services or 30 days from the date these Terms were last updated**. To opt out, You must send a written notification to Babylist at Baby List, Inc., 1900 Powell St, Suite 150, Emeryville, CA 94608, Attention: Legal, that includes (i) Your name, account username, address, telephone number and email address, and (ii) a clear statement indicating that You do not wish to resolve claims through arbitration and demonstrating compliance with the 30-day time limit to opt out of the above arbitration provision.

*Id.*, Ex. A, at 17 (emphasis in original); *see id.*, Ex. B, at 27 (2025 terms). Neither plaintiff opted out of the binding arbitration provision.

Plaintiffs sued Baby List, asserting one cause of action under the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, and two causes of action under California law. They aver that Baby List helped various third parties collect the responses that Plaintiffs provided to Baby List in the initial onboarding survey. Baby List moves to compel arbitration.

## II. LEGAL STANDARD

Under the Federal Arbitration Act, contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to

ORDER GRANTING MOTION TO COMPEL ARBITRATION
CASE NO. 25-cv-09496-RS

3

proceed to arbitration on issues as to which an arbitration agreement has been signed." *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "The [district] court's role under the [FAA] is therefore limited to determining (1) whether the agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

### III. DISCUSSION

Plaintiffs make three arguments to avoid arbitration: (1) that they never assented to the arbitration provision, (2) that, even if they did, the provisions are procedurally and substantively unconscionable, and (3) that, in any event, their claims fall outside the scope of the provision.

#### A. Assent to the Arbitration Provision

The first question is whether Plaintiffs actually assented to the arbitration provision by clicking "Sign Up" on the Baby List website. To answer that question, federal courts apply state-law principles of contract formation. *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025). Here, the parties agree that California contract law controls.

"To form a contract under California . . . law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Chabolla*, 129 F.4th at 1154 (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023)). Courts' propensity to find that a party had notice of an agreement formed online depends, in part, on the kind of agreement at issue. The easiest agreement to enforce is a so-called "clickwrap" agreement, in which "a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). "At the other end of the spectrum are so-called 'browsewrap' agreements, in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id.*

The agreements here resemble a "sign-in wrap" agreement, which falls somewhere in between a (presumptively enforceable) clickwrap agreement and a (presumptively unenforceable) browsewrap agreement. In a sign-in wrap agreement, "the website provides a link to terms of use

and indicates that some action may bind the user but does not require that the user actually review those terms." *Chabolla*, 129 F.4th at 1154. "Under California law, a sign-in wrap agreement may be an enforceable contract based on inquiry notice if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (internal quotation marks omitted).

Because the user's decision to click the sign-up button is sufficient to satisfy the second prong of the test, arbitrability turns on the first prong. To determine if the website provided "reasonably conspicuous notice of the terms to which the consumer will be bound," *Keebaugh*, 100 F.4th at 1014, courts evaluate the context of the transaction and the visual aspects of the website. *See Chabolla*, 129 F.4th at 1155–58.

Both factors suggest Baby List provided sufficiently conspicuous notice to its users that they were agreeing to its terms of use by clicking "Sign Up." When a user enters into an agreement with a website that contemplates some sort of continuing relationship, that user should expect the relationship to be governed by some contractual terms. *See Chabolla*, 129 F.4th at 1155. "Conversely, when a user simply purchases goods or avails herself of a one-time discount offer, there is less reason for her to expect a continued relationship beyond the purchase." *Id.* Here, Plaintiff and Baby List entered a continuing relationship. The nature of Baby List's services require as much. It provides registry management services for expecting parents. Those parents do not just buy one thing and leave the website forever; they typically build the registry, send it to friends and family, and manage it through the baby's birth and beyond. As a result, a user can expect to visit the Baby List website many times and have myriad electronic interactions with Baby List. That gives rise to an expectation that the relationship will be governed by contractual terms, which weighs in favor of finding inquiry notice of the Terms of Use.

The visual presentation of the contracting provision also supports a finding of proper notice. Baby List provided notice of the Terms of Use through a hyperlink. A well-developed line

United States District Court
Northern District of California

of Ninth Circuit cases sets out the conditions under which use of a hyperlink is sufficient. Most recently, in *Chabolla*, the Ninth Circuit found Classpass's link to its terms of service insufficient "[b]ecause of the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color." 129 F.4th at 1157. Importantly, the notice there was separated from the main action item (clicking "Continue") by a separate action time (clicking "Continue with Facebook") and the word "or." *See id.* at 1152. In addition, the notice that clicking continue constituted assent to the terms of use was presented "in the smallest font on the page," though the links themselves were set apart in blue. *See id.*

*Berman* was also on the insufficient side of the line. 30 F.4th at 856. The panel there concluded that "the text disclosing the existence of the terms and conditions on the[] websites [was] the antithesis of conspicuous." *Id.* It was "printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye." *Id.* at 856–57. In addition, "the textual notice [was] further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text." *Id.* at 857.

By contrast, the Ninth Circuit deemed sufficient the notice provided to the plaintiffs in *Oberstein*. 60 F.4th at 516. In that case, the panel emphasized that the "notice [was] conspicuously displayed directly above or below the action button at each of three independent stages that a user must complete before purchasing tickets." *Id.* As to the hyperlink itself, the panel found it acceptable that it was "conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent." *Id.* at 517.

So too in *Patrick v. Running Warehouse*, 93 F.4th 468, 477 (9th Cir. 2024). The panel there found a hyperlink to the terms of service well-presented enough to create a binding contract. It succinctly delineated the factors it found dispositive in that analysis:

> Running Warehouse includes explicit notice on the final order review page, directly below key information such as the purchase total, and directly below the button [plaintiff] tapped to complete his purchase. The notice is on an uncluttered page and is not hidden or obscured. The notice is clear and legible, and the hyperlinked phrase "terms of use" is colored bright green—contrasted against the surrounding

white background and adjacent black text. Moreover, the "terms of use" hyperlink is the same color as other clickable links on the page, suggesting clearly that it is a hyperlink.

*Id.*

The notice provided by Baby List here is much more like those in *Oberstein* and *Patrick* than those in *Chabolla* or *Berman*. As in *Oberstein*, the notice here was presented to users on a relatively uncluttered page. Baby List's sign-up page asked for either four or two pieces of information (depending on whether the user was signing up with Google) and it contained a checkbox regarding promotional offers, the sign-up button, notice that the user's registry would be private until shared, and a small notice about the website's privacy protections. All of those components were presented in clear, legible text. Compare that to the webpage in *Berman*, which, unlike here, was littered with large images and loud text that made the contract language—which was substantially smaller than the other important language on the page—extraordinarily easy to overlook. 30 F.4th at 850 (Appendix A).



The most meaningful difference between Baby List's webpage and that in *Patrick* and *Oberstein* is the color of the hyperlink. Instead of setting it aside in a noticeable color like green

ORDER GRANTING MOTION TO COMPEL ARBITRATION
CASE NO. 25-cv-09496-RS

United States District Court
Northern District of California

(*Patrick*) or blue (*Oberstein*) the Baby List hyperlinks were in black. However, Baby List compensates for that color choice with other design features. The hyperlinks are at least in a *different* color than the rest of the sentence, and they are underlined—conveying to the user that they are worthy of attention. Moreover, as in *Patrick*, the hyperlink to the terms of use is presented in the same way as the other three hyperlinks on the page, which reduces a reasonable user's confusion about what the dark, underlined text indicates.

The flow of the webpage is also much closer to *Patrick* than it is to *Chabolla*. Unlike in the latter case, there is hardly any text separating the sign-up button and the notice of assent in which the hyperlinks are located. Those two portions of the webpage are separated only by one line of text that reads "Your registry is private until you chose to share it." That single line does not remove the contracting language and associated hyperlinks from the user's natural flow. Perhaps it would have been preferable for Baby List to place the notice directly above or below the sign-up button, as in *Patrick* and *Oberstein*, but the placement here is close enough to capture a reasonable user's gaze. In sum, the notice here was sufficiently conspicuous, and Plaintiffs assented to the arbitration provision by clicking "Sign Up."

B. Unconscionability

There are two types of unconscionability under California law: procedural and substantive, "the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (internal quotation marks omitted). In Plaintiffs' view, two aspects of the arbitration agreement render it substantively unconscionable. The agreement contains a pre-arbitration demand provision, which Plaintiffs contend delays the submission of the claim to arbitration and gives Baby List a free peek at Plaintiffs' case. It also contains a mass arbitration clause which includes a "bellwether" provision, which may further delay resolution of Plaintiffs' claims by capping the number of like claims that can proceed at a given time. If that delay is sufficiently long, Plaintiffs worry that their claims will be timed out under the applicable limitations period.

Persuasive or not, Plaintiffs' arguments as to substantive unconscionability do not render

unenforceable the arbitration provision because "[b]oth substantive and procedural unconscionability must be present in order for a court to find a contract unconscionable," *Mohamed*, 848 F.3d at 1210 (internal quotation marks omitted), and the agreement here is not procedurally unconscionable. "The analysis for procedural unconscionability 'begins with an inquiry into whether the contract is one of adhesion.'" *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 952 (N.D. Cal. 2023) (quoting *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019)). A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 242 (2015). If the contract is adhesive, the question is then "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *OTO*, 8 Cal. 5th at 126 (quotation omitted).

However, a contract to arbitrate is not adhesive if there is an opportunity to opt-out, *see Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *Mohamed*, 848 F.3d at 1211, and Plaintiffs were given a chance to do so here. The Terms of Use permitted any user to opt out of the arbitration provision by sending a letter to Baby List within 30 days of signing up for an account. That is identical to the opt-out procedure deemed sufficient in *Circuit City Stores*. *See* 283 F.3d at 1199 ("Ahmed was not presented with a contract of adhesion because he was given the opportunity to opt-out of the Circuit City arbitration program by mailing in a simple one-page form [within 30 days].").

The opt-out provision was clearly displayed for a user that reviewed the Terms of Use. Notice was provided under the section of the contract labelled "Dispute Resolution." In the 2023 Terms, the subheading was labelled, in all caps, "RIGHT TO OPT OUT OF ARBITRATION WAIVER." Levada Decl., Ex. A, at 17. In the 2025 terms, the subheading was labelled, in underlined text, "Right to Opt Out of Arbitration." *Id.*, Ex. B, at 27. The opt-out provision thus renders the contract non-adhesive, and nothing else indicates the arbitration provision was procedurally unconscionable. Because the contract is not procedurally unconscionable, there is no

ORDER GRANTING MOTION TO COMPEL ARBITRATION
CASE NO. 25-cv-09496-RS

need to assess whether it is substantively unconscionable. *See Mohamed*, 848 F.3d at 1210.

C.   Scope of the Arbitration Provisions

Though Baby List contends that Plaintiffs' claims are ultimately arbitrable, its principal argument is that the issue of arbitrability has been delegated to the arbitrator. At least as to the 2025 Terms which bind Slaveiro, that is correct. The 2025 Terms provide that "all disputes concerning the arbitrability of a claim (including disputes about the scope, applicability, enforceability, revocability, or validity of the Arbitration Agreement) shall be decided by the arbitrator." This provision "clearly and unmistakably indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability." *Momot v. Mastro*, 652 F.3d 982, 983 (9th Cir. 2011); *see Mohamed*, 848 F.3d at 1209.

Baby List's argument that the arbitrability of Davis's claims must be decided by the arbitrator is more roundabout, but it is still correct. The 2023 Terms of Use which bind Davis do not contain a provision expressly committing arbitrability to the arbitrator. Instead, they require arbitration "in accordance with the Arbitration Rules and Procedures of Judicial Arbitration and Mediation Services, Inc. ('JAMS') then in effect." Levada Decl., Ex. A, at 17. The relevant JAMS rule, in turn, provides that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *See* JAMS Rule 11(b) (effective June 2021). In *Patrick*, the Ninth Circuit expressly held that valid incorporation of JAMS Rule 11(b) into terms of service "constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability." 93 F.4th at 481.

Plaintiffs' only argument to the contrary is that they should be given a break because they are unsophisticated parties. It is true that "[t]he issue of whether the sophistication of the contracting parties should be taken into account in evaluating whether a delegation to an arbitrator is clear and unmistakable is an open one in the Ninth Circuit." *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1252 (N.D. Cal. 2019). However, even if the parties' sophistication is a relevant consideration, it is the burden of the allegedly unsophisticated party to prove her lack of sophistication. *See Patrick*, 93 F.4th at 481 ("Plaintiffs offered no evidence concerning their

sophistication or lack thereof to the district court."). All Plaintiffs have done is make a bald assertion in their opposition to this motion that they "have no legal training or experience with reading and/or interpreting contracts," but they do not supplement that statement with any competent evidence, such as declarations, permitting an inference that they could not grasp the mechanism of compelling arbitration of arbitrability used here. Consequently, Plaintiffs are unable to escape the rule of *Patrick*. Whether their claims fall within the subject matter covered by the arbitration provision of the Terms of Service is for the arbitrator to decide.

## IV. CONCLUSION

For the foregoing reasons, Baby List's motion to compel arbitration is granted and the case is dismissed with prejudice.

**IT IS SO ORDERED**.

Dated: April 22, 2026

_____
RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California